IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | NO. 3:24-CR-049-S |
| ARVIN ZEINALI (02) | |

## FACTUAL RESUME

In support of Arvin Zeinali's plea of guilty to the offense in Count One of the indictment, Zeinali, the defendant, Jay Dewald, the defendant's attorney, and the United States of America (the government) stipulate and agree to the following:

## ELEMENTS OF THE OFFENSE

To prove the offense alleged in Count One of the indictment, charging a violation of 18 U.S.C. § 371 (18 U.S.C. § 1952), that is, conspiracy to violate the Travel Act based on commercial bribery under Texas law, the government must prove each of the following elements beyond a reasonable doubt:[1]

First.   That the defendant and at least one other person agreed to commit the crime of violating the Travel Act based on commercial bribery under Texas law, as charged in the indictment;

Second.   That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and

Third.   That at least one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the indictment, in order to accomplish some object or purpose of the conspiracy.

---

[1] *See Pattern Jury Instructions (Criminal Cases)*, Committee on Pattern Jury Instructions, District Judges Association, Fifth Circuit (2019) No. 2.15A.

**Factual Resume—Page 1**

The elements of the underlying offense of Travel Act, a violation of 18 U.S.C. § 1952, are as follows[2]:

First:   That the defendant or a coconspirator used any facility in interstate commerce;

Second:   That the defendant or a coconspirator did so with the specific intent to promote, manage, establish, or carry on unlawful activity, or distribute the proceeds thereof; and

Third:   That subsequent to the use of any facility in interstate commerce the defendant or a co-conspirator did knowingly and willfully promote, manage, establish, or carry on such unlawful activity, or distribute the proceeds thereof.

## STIPULATED FACTS

1.   Zeinali agrees and stipulates that from on or about September 16, 2014, through at least October 2019, in the Northern District of Texas and elsewhere, he, Amir Mortazavi, Arvin Zeinali, Trinity Champion Healthcare Partners, LLC, Hexamed Business Solutions, LLC, Robert Leisten, Amy Haase, Arnold Farbstein, Barry Weinstein, Eric Berkman, Jorge Cuza, Kathren McCarty, James Ellis, Walter Strash, and David Wolf, knowingly and willfully conspired, confederated, and agreed with Hillman, Narosov, Woodlee, Med Left, and with each other, and with others known and unknown to the Grand Jury, to violate 18 U.S.C. § 1952 (a)(1) and (a)(3); by using and causing to be used facilities in interstate commerce with the intent to promote, manage, establish, carry on, distribute the proceeds of, and facilitate the promotion, management,

---

[2] *See Pattern Jury Instructions (Criminal Cases)*, Committee on Pattern Jury Instructions, District Judges Association, Fifth Circuit (2019) No. 2.74.

**Factual Resume—Page 2**

establishment, carrying on, and distribution of the proceeds of an unlawful activity, specifically, Commercial Bribery in violation of Texas Penal Code § 32.43, and, thereafter, to perform and attempt to perform acts to promote, manage, establish, carry on, distribute the proceeds of, and facilitate the promotion, management, establishment, carrying on, and distribution of the proceeds of such unlawful activity; all in violation of 18 U.S.C. § 371 (18 U.S.C. § 1952))

2. Zeinali agrees and admits that Next Health was a holding company that owned and controlled numerous other entities including pharmacies. Next Health previously operated as Business Partners in Health and later as Critical Healthcare Management. References to Next Health herein include all these entities as well as all of their dozens of associated business entities, including Next Health's pharmacies: COR, Total, Hilltree, The Apothecary Shop, and Parkwood, among others. References to Next Health refer to all these entities.

3. Zeinali agrees and admits that Next Health was principally controlled by Andrew Hillman and Semyon Narosov, and they directed the activities of Next Health until at least July 2018; that Amir Mortazavi held various leadership roles in Next Health, including Chief Business Development Officer, Chief Commercialization Officer, and Chief Executive Officer of Next Health Pharmacy; and that Zeinali held various leadership roles in Next Health, including Senior Vice-President of Pharmacy and President of Pharmacy.

4. Zeinali agrees and admits that Vinson Woodlee, and his company, Med Left, LLC (Med Left), initially acted as a marketer for Next Health. In some instances,

Med Left would pay kickbacks directly to physicians or to someone in a close relationship with the physician. Later, Med Left operated several MSOs, more fully described below, which were used to funnel bribes and kickbacks from pharmacies to physicians. Unless otherwise noted, references to Woodlee or Med Left are used interchangeably herein.

5.  Zeinali agrees and admits that Next Health, through the efforts of, among others, Hillman, Narosov, Mortazavi, Zeinali and Woodlee agreed to split profits with numerous physicians on their prescriptions filled at Next Health pharmacies. The pharmacies would fill the prescriptions and then illegally kickback a portion of the profits from each prescription to the writing physicians.

6.  Zeinali agrees and admits that beginning in 2017 and continuing into 2018, Mortazavi, Zeinali, Woodlee, and others moved a large share of Next Health's illegal pharmacy business to a related entity, referred to herein as Altus or Pharma Select. Altus owned several pharmacies operating under different names, collectively referred to as "Altus" or "Pharma Select."

7.  Zeinali agrees and admits that Mortazavi and Zeinali were sometimes referred to as co-CEOs (Chief Executive Officers) and shared offices in Dallas for an entity known as Community Pharmacy Partners.

8.  Zeinali agrees and admits that once the illegal pharmacy business had been shifted from Next Health's Parkwood Pharmacy to Pharma Select, Woodlee continued his role funneling bribe and kickback payments from Altus to physicians. Woodlee operated several purported "Managed or Management Service Organizations" (MSOs).

Despite their name, these entities did not provide any real services. Instead, Woodlee used these MSOs and Med Left to conceal bribes and kickbacks that Altus paid to referring physicians.

9. Zeinali agrees and admits that it was part of the conspiracy that, from in or about February 2017 through in or about October 2019, Zeinali, Mortazavi, and others directed Pharma Select to pay bribes and kickbacks to referring physicians under the guise that the bribes and kickbacks were legitimate returns on investment in MSOs. Generally speaking, the physicians would write prescriptions to Pharma Select; Pharma Select would fill the prescriptions and split net proceeds with the physicians. Since the pharmacies could not pay the physicians directly, the physicians' shares of the profits were funneled through multiple entities including MSOs. In reality, (1) physician ownership in MSOs required referrals, (2) ownership was offered for a nominal fee, (3) physicians' individual shares in an MSO were based upon their volume of referrals; and (4) 100% of MSO revenues were generated by prescriptions written by physician owners.

10. Zeinali agrees and admits that it was a part of this conspiracy that the prescriptions were submitted to Next Health and Altus pharmacies through electronic wire communications including the use of facsimile machines. The filled prescriptions were then usually shipped by United States mail or interstate commercial carriers to the patients. Next Health and Altus used various means of electronic communications to bill private and government pay insurance providers for these prescriptions. Next Health and Altus then distributed the funds generated by the scheme to invested physicians or

intermediaries through various electronic means including ACH deposits and, in some instances, paper checks.

11. Zeinali agrees that Optum RX, Prime Therapeutics, and CVS Caremark are pharmacy benefit managers (PBMs) that were contracted with United Healthcare, Blue Cross Blue Shield of Texas, and Aetna, respectively, to administer their pharmacy claims. As such, Optum RX, Prime Therapeutics, and CVS Caremark were health care benefit programs affecting commerce as defined by 18 U.S.C. § 24(b). In addition to these three named PBMs, several other PBMs also paid pharmacy claims to Next Health and Altus pharmacies.

12. Zeinali agrees that the PBMs enter into contracts with individual pharmacies directly or through pharmacy service administrative organizations (PSAOs). This process allows independent pharmacies to access insurance customers whose pharmacy benefits are managed by the PBMs.

13. Zeinali agrees and admits that the pharmacies were not allowed to pay bribes and kickbacks to physicians in return for the physician referring prescriptions to the pharmacies. Further, if known to the PBMs, Zeinali agrees that the PBMs would not have paid the pharmacies for filling prescriptions that were induced by bribes and kickbacks to the prescribing physicians.

14. Zeinali agrees and admits that the following overt acts, among others, were committed during the course of the conspiracy:

    i. On or about November 6, 2014, Woodlee emailed Next Health and copied Hillman, Narosov, Mortazavi and Zeinali regarding sending blanket authorizations to all physicians at ROC and LOT.

ii. On or about June 2, 2015, Mortazavi, Zeinali and Woodlee while discussing, among other things, COR physician placement into Class G pharmacies, Mortazavi stated, "I trust you guys to do this. My suggestion is to group docs together [t]hat will hold each other accountable. ... I spoke to Leisten. He needs to form his POD of Md's so we can place them."

iii. On or about September 1, 2015, Leisten, Haase, Farbstein, Weinstein, Berkman, Cuza, and Wolf purchased shares in Hilltree Pharmacy. Leisten and Cuza purchased a 1.5% interest for $1,500; Haase, Farbstein, and Weinstein purchased 1% interest for $1,000; and Berkman and Wolf purchased .5% interest for $500.

iv. On or about April 1, 2016, Next Health prepared a Summary of Schedule K-1 for Hilltree Pharmacy, LLC, for the tax year 2015. It showed distributions to the following individuals (among others) and in the following amounts: Farbstein - $59,885, Weinstein - $59,885, Leisten - $89,827, Cuza - $89,827, Haase - $59,885, Berkman - $28,341, and Wolf - $29,942.

v. On or about May 2, 2018, a confidential human source (CHS) working with the FBI met with Mortazavi and Zeinali in Dallas in a recorded meeting. The CHS informed Mortazavi and Zeinali that he represented a group of doctors that wanted to get paid on their prescriptions. Mortazavi and Zeinali informed the CHS that they would only agree to pay the doctors through Woodlee and his MSO model and then directed the CHS to meet with Woodlee.

vi. On or about May 10, 2018, the CHS met with Woodlee in San Antonio, Texas in a recorded meeting. Woodlee explained in detail how Mortazavi and Zeinali would ensure that Woodlee, the CHS, and the doctors would get paid through the MSO model for the prescriptions they sent to Altus pharmacies.

vii. On or about May 22, 2018, Zeinali, Leisten, Weinstein, Cuza, Trinity Champion, and others known to the grand jury met at a dinner to discuss, among other things, switching their MSO structure, agreeing that all doctors in Trinity Champion would receive a weekly report for scripts submitted the previous week, and ensuring that each doctor had the latest "script pad."

viii. On or about July 1, 2019, an employee of Altus sent a "MEDLEFT REPORT ONLY" spreadsheet to a Med Left employee. It contained June

Factual Resume—Page 7

month-to-date prescriptions for among others, "Woodlee" doctors McCarthy, Stash, Wolf, and Ellis, and "Woodlee1" doctors Cuza, Farbstein, Haase, Leisten, and Weinstein. The report tracked each doctor by patient, number of prescriptions filled, sum of monies due from insurance companies, sum of cost to fill the prescription, and sum of net.

15. Zeinali agrees that he committed all the essential elements of the offense. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Count One of the indictment.

AGREED TO AND STIPULATED on this 21st day of March, 2024.

_____
ARVIN ZEINALI
Defendant

_____
JAY DEWALD
Attorney for Defendant

LEIGHA SIMONTON
UNITED STATES ATTORNEY

_____
CHAD E. MEACHAM
Assistant United States Attorney
Texas Bar No. 00784584
Email: chad.meacham@usdoj.gov
MARTY BASU
Assistant United States Attorney
Illinois Bar No. 6302360
Email: marty.basu@usdoj.gov
DONNA STRITTMATTER MAX
Assistant United States Attorney
Texas Bar No. 24041984
Email: donna.max@usdoj.gov
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Tel: (214) 659-8600
Fax: (214) 659-8809