IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | NO. 3:24-CR-049-S |
| TRINITY CHAMPION HEALTHCARE PARTNERS, LLC (03) | |

## FACTUAL RESUME

In support of Trinity Champion Healthcare Partners, LLC's (Trinity Champion) plea of guilty to the offense in Count Two of the indictment, Trinity Champion, ("the defendant"), Scott Thomas, the defendant's attorney, and the United States of America (the government) stipulate and agree to the following:

## ELEMENTS OF THE OFFENSE

To prove the offense alleged in Count Two of the indictment, charging a violation of 18 U.S.C. § 1956(h), that is, conspiracy to commit concealment money laundering, the government must prove each of the following elements beyond a reasonable doubt:[1]

*First.* That the defendant and at least one other person made an agreement to commit the crime of concealment money laundering as charged in Count 2 of the indictment;

*Second.* That the defendant knew the unlawful purpose of the agreement; and

*Third.* That the defendant joined in the agreement willfully, that is, with the intent to further the unlawful purpose.

---

[1] Fifth Circuit Pattern Jury Instruction 2.76C (5th Cir. 2019).

Factual Resume—Page 1

The elements of laundering monetary instruments, a violation of 18 U.S.C. § 1956(a)(1)(B)(i), are as follows:[2]

*First.*   That the defendant knowingly conducted a financial transaction;

*Second.*   That the financial transaction involved the proceeds of specified unlawful activity, namely travel act violations predicted upon Texas commercial bribery, honest service wire fraud, and/or wire fraud;

*Third.*   That the defendant knew the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and

*Fourth.*   That the defendant knew the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the specified unlawful activity.

With respect to the second element, the government must show that, in fact, the property was the proceeds of travel act violations predicted upon Texas commercial bribery, honest service wire fraud, and/or wire fraud, which is a specified unlawful activity under the statute.

With respect to the third element, the government must prove that the defendant knew that the property involved in the transaction were the proceeds of some kind of crime that is a felony under federal, state, or foreign law; although, it is not necessary to show that the defendant knew exactly what crime generated the funds.

---

[2] Fifth Circuit Pattern Jury Instructions, No. 2.76A (2019).

## COMPANY CRIMINAL LIABILITY[3]

Defendant Trinity Champion Healthcare Partners, LLC, is a limited liability company (company). A company may be found guilty of a criminal offense.

A company can act only through its agents – that is, its managers, partners, directors, officers, employees, and other persons authorized to act for it. To find a corporate defendant guilty, the government must prove each of the following elements beyond a reasonable doubt:

> *First.*   Each element of the crime charged against the company was committed by one or more of its agents;
>
> *Second.*  In committing those acts the agent or agents intended, at least in part, to benefit the company; and
>
> *Third.*   That each act was within the scope of employment of the agent who committed it.

## STIPULATED FACTS

1. Trinity Champion admits and agrees from at least February of 2017 through at least October of 2019, in the Northern District of Texas and elsewhere, it did knowingly combine, conspire, and agree with Amir Mortazavi, Arvin Zeinali, Robert Leisten, Amy Haase, Arnold Farbstein, Barry Weinstein, Eric Berkman, Jorge Cuza Vinson Woodlee, and Med Left, and with other persons known and unknown to knowingly conduct and attempt to conduct financial transactions affecting interstate

---

[3]*United States v. Investment Enterprise, Inc.*, 10 F.3d 263, 266 (5th Cir. 1993); *United States v. Gas Pipe, Inc., et al*, No. 3:14-CR-298-M (Jury Instructions) (Dkt. 1045 at 9-10) ); 1 U.S.C. § 1 (defining that the words "person" and "whoever" include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals)(emphasis added).

commerce, which transactions involved the proceeds of specified unlawful activity, that is,

> conspiracy to commit commercial bribery under Texas law and the Federal travel act as charged in Count One, conspiracy to commit wire fraud by deprivation of the intangible right of honest services as charged in Count One, and/or conspiracy to commit healthcare fraud in violation of 18 U.S.C. §§ 1347 and 1349 as alleged in Count Two,

knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), all in violation of Title 18, United States Code, Section 1956(h).

2. Trinity Champion agrees that beginning in 2017 and continuing into 2018, Mortazavi, Zeinali, Woodlee, and others moved a large share of Next Health's illegal pharmacy business to a related entity, referred to herein as Altus or Pharma Select.

3. Trinity Champion agrees and admits that Woodlee and Med Left founded, owned, and controlled Trinity Champion. Trinity Champion agrees and admits that it was opened as a purported "Managed or Management Service Organizations" (MSO). However, despite the name, Trinity Champion agrees that it provided little to no services. Instead, Trinity Champion agrees that Woodlee used MSOs like Trinity Champion to funnel bribes and kickbacks from pharmacies to physicians.

4. Trinity Champion agrees and admits that it was part of the conspiracy that, from in or about February 2017 through in or about October 2019, bribes and kickbacks were paid to referring physicians under the guise that the bribes and kickbacks were legitimate returns on investment in MSOs. Generally speaking, the physicians would write prescriptions to Pharma Select; Pharma Select would fill the prescriptions and split net proceeds with the physicians. Since the pharmacies could not pay the physicians directly, the physician's share of the profits was funneled through multiple entities including MSOs. In reality, (1) physician ownership in MSOs required referrals, (2) ownership was offered for a nominal fee, (3) physician's individual shares in an MSO were based upon volume of referrals; and (4) 100% of MSO revenues were generated by prescriptions written by physician owners.

5. Leisten, Haase, Farbstein, Weinstein, Berkman, and Cuza were paid through Trinity Champion Healthcare Partners, LLC. Raintree Healthcare Partners, an entity controlled by Leisten, "owned" all the physician shares in Trinity Champion. Thus, in exchange for Leisten, Haase, Farbstein, Weinstein, Berkman, and Cuza referring prescriptions to Pharma Select: (i) Pharma Select funneled kickback payments to Med Left; (ii) Med Left paid Trinity Champion; (iii) Trinity Champion paid Raintree; and (iv) Leisten paid Haase, Farbstein, Weinstein, Berkman, Cuza, and himself from Raintree.

6. Med Left and Trinity Champion used bank accounts at JP Morgan Chase. Trinity Champion agrees and stipulates that at all relevant times, proceeds from the criminal scheme were deposited into a Med Left bank account. Then, Med Left transferred the kickbacks due to Leisten, Haase, Farbstein, Weinstein, Berkman, and

Cuza to Trinity Champion. Finally, Trinity Champion paid Leisten's, Haase's, Farbstein's, Weinstein's, Berkman's, and Cuza's s individual shares of profits earned on their prescriptions to Raintree. Trinity Champion agrees and admits that all of these transfers of proceeds were financial transactions affecting interstate commerce and were conducted at, through or to financial institutions within the meaning of 18 U.S.C. §§ 1956(c). Trinity Champion further agrees and admits that since it is illegal for pharmacies and doctors to engage in the bribery and kickback scheme that occurred here, that the funds involved in these numerous transactions represented the proceeds of some form of unlawful activity.

7. By way of example only, on or about September 1, 2017, Altus agreed to pay 55% of net profits to Leisten, Haase, Farbstein, Weinstein, Berkman, Cuza for their prescriptions filled at Altus/Pharma Select and this was reflected on the November 2017 "commission" report that was prepared by Altus and sent to Med Left.

**PHARMA HOLDCO COMMISSION SUMMARY**

**Entity:** MEDLEFT
**Date Range:** Nov-17

**ALL PHYSICIANS**

| | |
|---|---|
| Total Collections | $ 954,146.77 |
| COGS | $ (445,716.60) |
| Net Revenue | $ 508,430.17 |
| **Commissions Due:** | $ 260,729.65 |
| 55% Cuza, ▓▓▓ Weistein, Haase, Berkman, Leisten, Farbstein | |
| **Total to be paid:** | $ 260,729.65 |

8. Also, on or about June 25, 2018, a known individual sent Trinity Champion's May 2018 Summary Report for Trinity Champion to Leisten and copied Woodlee and Trinity Champion's manager. The summary report was prepared from information from Altus/Pharma Select which tracked prescriptions by each doctor by profit.

TRINITY CHAMPION ANALYSIS — Pharmacy — MAY 2018

| PHARMACY | TOTAL # OF SCRIPTS | T/T NEW SCRIPT NOT FILLED | T/F NEW SCRIPT FILLED BY INSURANCE | T/C NEW SCRIPT FILLED BY CASH | F/T REFILL ON HOLD | F/F REFILL FILLED BY INSURANCE | F/C REFILL FILLED BY CASH | WORK COMP | AMOUNT DUE | % TOTAL REVENUE | AVG PER PAID RX |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Dr. Eric Berkman | 18 | | 10 | 3 | | 5 | | | 3,535.02 | 4% | $ 235.67 |
| Dr. Jorge Cuza | 86 | | 37 | 1 | | 47 | 1 | | 21,591.67 | 23% | $ 257.04 |
| Dr. Arnold Farbstein | 90 | | 50 | 9 | | 31 | | | 20,300.96 | 22% | $ 250.63 |
| Dr. Amy Haase | 28 | | 24 | 3 | | 1 | | | 3,620.16 | 4% | $ 144.81 |
| ▬▬▬▬ | 33 | | 19 | 2 | | 11 | 1 | | 7,081.62 | 8% | $ 236.05 |
| Dr. Robert Leisten | 68 | | 18 | 3 | | 47 | | | 9,806.74 | 10% | $ 150.87 |
| Dr. Barry Weinstein | 159 | | 92 | 3 | | 63 | 1 | | 27,489.37 | 29% | $ 177.35 |
| TOTAL | 482 | 0 | 250 | 24 | 0 | 205 | 3 | 0 | 93,425.55 | 100% | |

| | |
|---|---|
| TOTAL REVENUE MEDLEFT TO PAY TRINITY CHAMPION | 93,425.55 |
| LESS SUBCONTRACTED SERVICES | (46,712.78) |
| LESS RESOURCE FEE | (9,342.56) |
| NET AMOUNT PAID TO TRINITY CHAMPION | 37,370.22 |
| TRINITY CHAMPION DISTRIBUTION RAINTREE | 99 | 36,996.52 |
| TRINITY CHAMPION DISTRIBUTION TO JANDON | 1 | 373.70 |
| | 100 | 37,370.22 |

9. Trinity Champion admits that, as shown above, Woodlee and others created MSO entities, including Trinity Champion, that entered into "subcontracted services agreements" and "resources agreements" with Med Left – purportedly where Med Left

and Trinity Champion are in a "legitimate" contractual business relationship where the entities are providing resources and services to or for each other. Trinity Champion admits that, in reality, the MSOs, including Trinity Champion provided little to no services and were used instead to hide kickback payments from Altus/Pharma Select to the physicians for profitable prescriptions.

10. Trinity Champion agrees that its agents committed all the essential elements of the offense. Trinity Champion agrees that its agents, partners, and managers knew all relevant times that it was illegal for pharmacies to pay kickbacks to doctors in return for prescriptions to be filled at those pharmacies. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Count Two of the indictment.

AGREED TO AND STIPULATED on this 3rd day of April, 2024.

_____
Janson Woodlee, Manager
Trinity Champion Healthcare
Partners, LLC.
Defendant

_____
Scott Thomas
Attorney for Defendant

LEIGHA SIMONTON
UNITED STATES ATTORNEY

_____
CHAD E. MEACHAM
Assistant United States Attorney
Texas Bar No. 00784584
Email: chad.meacham@usdoj.gov
MARTY BASU
Assistant United States Attorney
Illinois Bar No. 6302360
Email: marty.basu@usdoj.gov
DONNA STRITTMATTER MAX
Assistant United States Attorney
Texas Bar No. 24041984
Email: donna.max@usdoj.gov
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Tel: (214) 659-8600