IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | NO. 3:24-CR-049-S (04) |
| HEXAMED BUSINESS SOLUTIONS, LLC | |

## FACTUAL RESUME

In support of Hexamed Business Solutions, LLC's (Hexamed) plea of guilty to the offense in Count Two of the indictment, Hexamed, the defendant, Scott Thomas, the defendant's attorney, and the United States of America (the government) stipulate and agree to the following:

## ELEMENTS OF THE OFFENSE

To prove the offense alleged in Count Two of the indictment, charging a violation of 18 U.S.C. § 1956(h), that is, conspiracy to commit concealment money laundering, the government must prove each of the following elements beyond a reasonable doubt:[1]

*First.* That the defendant and at least one other person made an agreement to commit the crime of concealment money laundering as charged in Count 2 of the indictment;

*Second.* That the defendant knew the unlawful purpose of the agreement; and

*Third.* That the defendant joined in the agreement willfully, that is, with the intent to further the unlawful purpose.

---

[1] Fifth Circuit Pattern Jury Instruction 2.76C (5th Cir. 2019).

**Factual Resume—Page 1**

The elements of laundering monetary instruments, a violation of 18 U.S.C. § 1956(a)(1)(B)(i), are as follows:[2]

*First.*     That the defendant knowingly conducted a financial transaction;

*Second.*     That the financial transaction involved the proceeds of specified unlawful activity, namely travel act violations predicated upon Texas commercial bribery, honest service wire fraud, and/or wire fraud;

*Third.*     That the defendant knew the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and

*Fourth.*     That the defendant knew the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds of the specified unlawful activity.

With respect to the second element, the government must show that, in fact, the property was the proceeds of travel act violations predicated upon Texas commercial bribery, honest service wire fraud, and/or wire fraud, which is a specified unlawful activity under the statute.

With respect to the third element, the government must prove that the defendant knew that the property involved in the transaction were the proceeds of some kind of crime that is a felony under federal, state, or foreign law; although, it is not necessary to show that the defendant knew exactly what crime generated the funds.

---

[2] Fifth Circuit Pattern Jury Instructions, No. 2.76A (2019).

**Factual Resume—Page 2**

## COMPANY CRIMINAL LIABILITY[3]

Defendant Hexamed Business Solutions, LLC, is a limited liability company (company). A company may be found guilty of a criminal offense.

A company can act only through its agents – that is, its managers, partners, directors, officers, employees, and other persons authorized to act for it. To find a company defendant guilty, the government must prove each of the following elements beyond a reasonable doubt:

*First.* Each element of the crime charged against the company was committed by one or more of its agents;

*Second.* In committing those acts the agent or agents intended, at least in part, to benefit the company; and

*Third.* That each act was within the scope of employment of the agent who committed it.

## STIPULATED FACTS

1. Hexamed Business Solutions, LLC admits and agrees from about January 1, 2018, through at least October of 2019, in the Northern District of Texas and elsewhere, it did knowingly combine, conspire, and agree with Amir Mortazavi, Arvin Zeinali, Kathren McCarty, James Ellis, David Wolf, Vinson Woodlee, and Med Left, and with other persons known and unknown to knowingly conduct and attempt to conduct

---

[3] *United States v. Investment Enterprise, Inc.*, 10 F.3d 263, 266 (5th Cir. 1993); *United States v. Gas Pipe, Inc., et al*, No. 3:14-CR-298-M (Jury Instructions) (Dkt. 1045 at 9-10); 1 U.S.C. § 1 (defining that the words "person" and "whoever" include corporations, **companies**, associations, firms, partnerships, societies, and joint stock companies, as well as individuals)(emphasis added).

financial transactions affecting interstate commerce, which transactions involved the proceeds of specified unlawful activity, that is,

> conspiracy to commit commercial bribery under Texas law and the Federal travel act as charged in Count One, conspiracy to commit wire fraud by deprivation of the intangible right of honest services as charged in Count One, and/or conspiracy to commit healthcare fraud in violation of 18 U.S.C. §§ 1347 and 1349 as alleged in Count Two,

knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), all in violation of Title 18, United States Code, Section 1956(h).

2. Hexamed agrees that beginning in 2017 and continuing into 2018, Mortazavi, Zeinali, Woodlee, and others moved a large share of Next Health's illegal pharmacy business to a related entity, referred to herein as Altus or Pharma Select.

3. Hexamed agrees and admits that Woodlee and Med Left founded, owned, and controlled Hexamed. Hexamed agrees and admits that it was opened as a purported "Managed or Management Service Organizations" (MSO). However, despite the name, Hexamed agrees that it provided little to no services. Instead, Hexamed agrees that Woodlee used MSOs like Hexamed to funnel bribes and kickbacks from pharmacies to physicians.

4.  Hexamed agrees and admits that it was part of the conspiracy that, from in or about January 1, 2018, through in or about October 2019, bribes and kickbacks were paid to referring physicians under the guise that the bribes and kickbacks were legitimate returns on investment in MSOs. Generally speaking, the physicians would write prescriptions to Pharma Select; Pharma Select would fill the prescriptions and split net proceeds with the physicians. Since the pharmacies could not pay the physicians directly, the physician's share of the profits was funneled through multiple entities including MSOs. In reality, (1) physician ownership in MSOs required referrals, (2) ownership was offered for a nominal fee, (3) physician's individual shares in an MSO were based upon volume of referrals; and (4) 100% of MSO revenues were generated by prescriptions written by physician owners.

5.  McCarty, Strash, Wolf, and Ellis were "invested" physicians in several MSOs including Eagle Ridge Healthcare Partners, LLC (Eagle Ridge) and Hexamed. Thus, in exchange for McCarty, Strash, Wolf, and Ellis referring prescriptions to Pharma Select: (i) Pharma Select funneled kickback payments to Med Left; (ii) Med Left paid Eagle Ridge first, and then later in time, Hexamed; and (iii) Eagle Ridge and Hexamed paid McCarty, Strash, Wolf, and Ellis.

6.  Med Left and Hexamed used bank accounts at JP Morgan Chase. Hexamed agrees and stipulates that at all relevant times, proceeds from the criminal scheme were deposited into a Med Left bank account. Then, Med Left transferred the kickbacks due to McCarty, Strash, Wolf, and Ellis to Hexamed. Finally, Hexamed paid McCarty, Strash, Wolf, and Ellis their individual share of profits earned on the prescriptions they had

written the previous month. Hexamed agrees and admits that all of these transfers of proceeds were financial transactions affecting interstate commerce and were conducted at, through or to financial institutions within the meaning of 18 U.S.C. §§ 1956(c). Hexamed further agrees and admits that since it is illegal for pharmacies and doctors to engage in the bribery and kickback scheme that occurred here, that the funds involved in these numerous transactions represented the proceeds of some form of unlawful activity.

7.  For example, on or about February 13, 2018, through a series of emails, Hexamed agents informed McCarty that she was being offered 25 shares in the new MSO – Hexamed. Hexamed agents would need her to sign some documents and send in her $2,500 for those shares – and that the last "off-cycle" distribution from the old MSO (Eagle Ridge) was being paid today and that it will offset this buy-in. McCarty was further told that there will be a distribution from the new entity (Hexamed) before the end of the month and we "want to get our ducks in a row well before then …"

8.  Also, on or about February 23, 2018, Hexamed agents informed Strash that the summary report for the new entity Hexamed was completed and that Strash's distribution would be $3,271.62 "once we can officially activate the MSO." Hexamed agents further informed Strash of the status of each "investor" in the new Hexamed entity, including: "must have the signed paperwork and buy-in checks from each investor and here is the status for each:

> Dr. Scott Ellis-- should have signed paperwork and check by the end of next week
> Dr. Kathren McCarty-- should pick up signed paperwork and check later today
> Dr. Walter Strash-- signed paperwork received, no check yet
> Dr. David Wolf-- signed paperwork and check have been received"

9. Also, on or about April 23, 2018, Hexamed's manager sent the March 2018 Summary Report for Hexamed to Ellis, McCarty, Strash, Wolf, and a known individual and informed them distributions were made today and will post tomorrow. These prescriptions had been tracked by doctor by profit by Pharma Select, and the profits were then paid to Med Left. Med Left then transferred the money to Hexamed, and Hexamed paid the doctors, Med Left and Hexamed; all as follows in this chart and the next:

| PHARMACY | TOTAL # OF SCRIPTS | NEW SCRIPT NOT FILLED | NEW SCRIPT FILLED BY INSURANCE | NEW SCRIPT FILLED BY CASH | REFILL ON HOLD | REFILL FILLED BY INSURANCE | REFILL FILLED BY CASH | AMOUNT DUE |
|---|---|---|---|---|---|---|---|---|
| ▮▮▮▮ | 48 | | 11 | 3 | | 34 | | 6,931.07 |
| DR. SCOTT ELLIS | 17 | | 14 | 3 | | | | 1,386.02 |
| DR. KATHREN MCCARTY | 84 | | 52 | | | 32 | | 17,287.66 |
| DR. WALTER STRASH | 70 | | 26 | 6 | | 37 | 1 | 14,955.02 |
| DR. DAVID WOLF | 23 | | 9 | | | 14 | | 3,085.21 |
| TOTAL | 242 | 0 | 112 | 12 | 0 | 117 | 1 | 43,644.98 |

| | | | |
|---|---|---|---|
| TOTAL REVENUE MEDLEFT TO PAY HEXAMED | | 43,644.98 | |
| LESS SUBCONTRACTED SERVICES | | (21,822.49) | |
| LESS RESOURCE FEE | | (4,364.50) | (26,186.99) |
| NET AMOUNT TO HEXAMED | | 17,457.99 | |
| HEXAMED DISTRIBUTION TO ▮▮▮ | 20 | 20.84 | 3,638.25 |
| HEXAMED DISTRIBUTION TO ELLIS | 15 | 15.64 | 2,730.43 |
| HEXAMED DISTRIBUTION TO MCCARTY | 25 | 26.05 | 4,547.81 |
| HEXAMED DISTRIBUTION TO STRASH | 25 | 26.05 | 4,547.81 |
| HEXAMED DISTRIBUTION TO WOLF | 10 | 10.42 | 1,819.12 |
| | 95 | 99 | 17,283.41 |
| HEXAMED DISTRIBUTION TO JANDON ENTERPRISES | | 1 | 174.58 |
| | | | 17,457.99 |

Factual Resume—Page 7

10. Hexamed admits that, as shown above, Woodlee and others created MSO entities, including Hexamed, that entered into "subcontracted services agreements" and "resources agreements" with Med Left – purportedly where Med Left and Hexamed are in a "legitimate" contractual business relationship where the entities are providing resources and services to or for each other. Hexamed admits that, in reality, the MSOs, including Hexamed provided little to no services and were used instead to hide kickback payments from Altus/Pharma Select to the physicians for profitable prescriptions.

11. Hexamed agrees that its agents committed all the essential elements of the offense. Hexamed agrees that its agents, partners, and managers knew all relevant times that it was illegal for pharmacies to pay kickbacks to doctors in return for prescriptions to be filled at those pharmacies. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Count Two of the indictment.

[nothing follows on this page]

AGREED TO AND STIPULATED on this 3rd day of ~~March~~ April, 2024.

*[signature]*
Janson Woodlee, Manager
Hexamed Business Solutions, LLC
Defendant

*[signature]*
Scott Thomas
Attorney for Defendant

LEIGHA SIMONTON
UNITED STATES ATTORNEY

*[signature]*
CHAD E. MEACHAM
Assistant United States Attorney
Texas Bar No. 00784584
Email: chad.meacham@usdoj.gov [address]
MARTY BASU
Assistant United States Attorney
Illinois Bar No. 6302360
Email: marty.basu@usdoj.gov
DONNA STRITTMATTER MAX
Assistant United States Attorney
Texas Bar No. 24041984
Email: donna.max@usdoj.gov
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Tel: (214) 659-8600
Fax: (214) 659-8809