ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

FILED-USDC-NDTX-DA
'25 MAR 31 AM 11:23
kns

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | NO. 3:24-CR-049-S |
| BARRY WEINSTEIN (08) | |

## FACTUAL RESUME

In support of Barry Weinstein's plea of guilty to the offense in Count One of the Superseding Information, Weinstein, the defendant, Daniel K. Hagood, the defendant's attorney, and the United States of America (the government) stipulate and agree to the following:

## ELEMENTS OF THE OFFENSE

To prove the offense alleged in Count One of the Superseding Information, charging a violation of 18 U.S.C. § 371, that is, conspiracy to violate the travel act, the government must prove each of the following elements beyond a reasonable doubt:[1]

*First.* That the defendant and at least one other person agreed to violate the travel act (18 U.S.C. § 1952(a)(1) or (a)(3)) based upon the Texas Commercial Bribery statute as charged in the superseding information;

*Second.* That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and

*Third.* That at least one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts

---

[1] Fifth Circuit Pattern Jury Instruction 2.15A (5th Cir. 2024).

Factual Resume—Page 1

described in the superseding information, in order to accomplish some object or purpose of the conspiracy.

The elements of a violation of 18 U.S.C. § 1952(a)(1) are as follows[2]:

*First:* That the defendant used the mail or any facility in interstate commerce;

Second: That the defendant did so with the specific intent to distribute the proceeds of commercial bribery in violation of Texas law; and

Third: That subsequent to the use of the mail or use of any facility in interstate commerce the defendant did knowingly and willfully distribute the proceeds of such unlawful activity.

The elements of a violation of 18 U.S.C. § 1952(a)(3) are as follows[3]:

First: That the defendant used the mail or any facility in interstate commerce;

Second: That the defendant did so with the specific intent to promote, manage, establish, or carry on any unlawful activity; and

Third: That subsequent to use of the mail or use of any facility in interstate commerce the defendant did knowingly and willfully promote, manage, establish, or carry on such unlawful activity.

## STIPULATED FACTS

1. Barry Weinstein admits and agrees that from on or about February 1, 2017, through at least October 2019, in the Northern District of Texas and elsewhere, Defendant **Barry Weinstein,** along with Amir Mortazavi, Arvin Zeinali, Trinity Champion Healthcare Partners, LLC, Robert Leisten, Amy Haase, Arnold Farbstein, Eric Berkman, and Jorge Cuza, knowingly and willfully conspired, confederated, and agreed

---

[2] Fifth Circuit Pattern Jury Instruction 2.74 (5th Cir. 2024).

[3] Id.

Factual Resume—Page 2

with Vinson Woodlee, and with each other, and with others known and unknown, to violate 18 U.S.C. § 1952 (a)(1) and (a)(3); by using and causing to be used facilities in interstate commerce with the intent to promote, manage, establish, carry on, distribute the proceeds of, and facilitate the promotion, management, establishment, carrying on, and distribution of the proceeds of an unlawful activity, specifically, Commercial Bribery in violation of Texas Penal Code § 32.43, and, thereafter, to perform and attempt to perform acts to promote, manage, establish, carry on, distribute the proceeds of, and facilitate the promotion, management, establishment, carrying on, and distribution of the proceeds of such unlawful activity.

2. Weinstein admits and agrees that it was a purpose and object of the conspiracy to illegally generate large sums of money for the defendants and their co-conspirators by exchanging concealed bribes and kickbacks for referrals of profitable prescriptions.

3. Weinstein admits and agrees that the manner and means by which he and the other defendants and others sought to accomplish the object of the conspiracy included, among other things, the following:

a. It was part of the conspiracy that, from in or about February 2017 through in or about October 2019, bribes and kickbacks were paid to referring physicians under the guise that the bribes and kickbacks were legitimate returns on investment in MSOs. Generally speaking, the physicians would write prescriptions to Parkwood or Pharma Select (sometimes referred to as Altus); Parkwood or Pharma Select would fill the prescriptions and split net proceeds with the physicians. Since the pharmacies could not

pay the physicians directly, the physician's share of the profits was funneled through multiple entities including MSOs. In reality, (1) physician ownership in MSOs required referrals, (2) ownership was offered for a nominal fee, (3) physician's individual shares in an MSO were based upon volume of referrals; and (4) 100% of MSO revenues were generated by prescriptions written by physician owners.

      b.     Leisten, Haase, Farbstein, Weinstein, Berkman, and Cuza were paid through Trinity Champion Healthcare Partners, LLC. Raintree Healthcare Partners, an entity controlled by Leisten, "owned" all the physician shares in Trinity Champion. Thus, in exchange for Leisten, Haase, Farbstein, Weinstein, Berkman, and Cuza referring prescriptions to Parkwood or Pharma Select: (i) Parkwood or Pharma Select funneled kickback payments to Med Left; (ii) Med Left paid Trinity Champion; (iii) Trinity Champion paid Raintree; and (iv) Leisten paid Haase, Farbstein, Weinstein, Berkman, Cuza, and himself from Raintree.

      c.     At all relevant times it was a part of this conspiracy that the prescriptions were submitted to Parkwood and Altus pharmacies through electronic wire communications including the use of facsimile machines. The filled prescriptions were then usually shipped by United States mail or interstate commercial carriers to the patients. Parkwood and Altus used various means of electronic communications to bill private and government pay insurance providers for these prescriptions. Parkwood and Altus then distributed the funds generated by the scheme to invested physicians or intermediaries through various electronic means including ACH deposits and, in some instances, paper checks.

4.    Weinstein admits and agrees that in furtherance of the conspiracy, and to accomplish its object and purposes, he or others committed and caused to be committed, in the Northern District of Texas and elsewhere, the following overt acts, among others:

    a.    On or May 26, 2017, Parkwood prepared a report reflecting the status of prescriptions submitted and included the categories of "Filled," "On hold," "Cash," and "Grand Total" for, among other doctors, Leisten, Haase, Farbstein, Weinstein, Berkman, and Cuza.

    b.    On or about September 1, 2017, Altus agreed to pay 55% of net profits to Leisten, Haase, Farbstein, Weinstein, Berkman, and Cuza for their prescriptions filled at Altus.

    c.    On or about January 8, 2018, Leisten sent an email to a known individual seeking an Altus Pharmacy report that included "COGs, Amount paid and profit."

    d.    On or about January 26, 2018, Leisten sent an email to a Med Left employee regarding the December payment to Trinity Champion. Leisten asked specifically, "When you report total income is $92041.58  (55%)  Does that mean Altus collected $167348.38 on our doctors?"

    e.    On or about January 31, 2018, a known Med Left employee sent Leisten an email that walked him through the financials for Trinity Champion for December 2017, informing Leisten that Altus received $331,342.35 from insurance companies for prescriptions filled there in December. The cost to Altus to fill those prescriptions was $163,994.02, which was deducted from the total

received, leaving a net collected number of $167,348.33. The amount paid to Med Left is 55% of net proceeds [$92,041.58], and 100% of that money is paid from Med Left to the MSO.

 f. On or about February 6, 2018, Leisten emailed Haase, Farbstein, Weinstein, Berkman, and Cuza and informed them: "Beware of Bogus Script Pads - I have been informed today that our old "friends" at Parkwood Pharmacy are sending out new prescription pads to our offices in hope that we accidentally send them our prescriptions. Please note that all our prescriptions should be faxed to Pharma-Select at 832 324-3993. Let me know if you have any questions or concerns."

 g. On or about May 22, 2018, Zeinali, Leisten, Weinstein, Cuza, Trinity Champion, and others known to the grand jury met at a dinner to discuss, among other things, switching their MSO structure, agreeing that all doctors in Trinity Champion would receive a weekly report for scripts submitted the previous week, and ensuring that each doctor had the latest "script pad."

 h. On or about August 27, 2018, a "MEDLEFT REPORT ONLY" spreadsheet was sent from Altus to Med left. It contained month-to-date prescriptions for among others, "Woodlee1" doctors Cuza, Farbstein, Haase, Leisten, and Weinstein. The report tracked each doctor by patient, number of prescriptions filled, sum of monies due from insurance companies, sum of cost to fill each prescription, and sum of net.

      i.      On or about August 29, 2018, in a series of emails, an unindicted co-conspirator paid through Trinity Champion and Raintree, questioned an employee of Med Left about which prescriptions sent to Pharma Select were more profitable – creams or oral Naproxyn which is what that doctor had been prescribing for his patients. Ultimately, this unindicted co-conspirator concluded "no wonder I see these insane number of rx for some of the docs. I have been using a fair amount of the Naproxyn but will focus on the creams going forward."

      j.      On or about October 11, 2018, an Altus employee sent a commission summary for the month of August to a Med Left employee. It reflected, among other things, that Cuza, Weinstein, Haase, Berkman, Leisten, and Farbstein were paid 55% of net revenue on their prescriptions.

      k.      On or about June 26, 2019, Leisten asked a Med Left employee "when can we expect the May report and funding?"

      l.      On or about July 1, 2019, an employee of Altus sent a "MEDLEFT REPORT ONLY" spreadsheet to a Med Left employee. It contained June month-to-date prescriptions for among others, "Woodlee1" doctors Cuza, Farbstein, Haase, Leisten, and Weinstein. The report tracked each doctor by patient, number of prescriptions filled, sum of monies due from insurance companies, sum of cost to fill the prescription, and sum of net.

5.      Weinstein agrees that during the time period alleged which addresses the payments from the pharmacies, through Med Left and Trinity Champion, to Raintree Healthcare Partners, and then to prescribing doctors, that he personally received

approximately $221,754.36 from Raintree. Weinstein further agrees that the total amount of money reflected in his plea agreement of $306,976.22 which includes the proceeds from Raintree listed above, is the total amount received by him from any pharmacy in which he had an improper financial relationship.

6. The defendant agrees that the defendant committed all the essential elements of the offense. This factual resume is not intended to be a complete accounting of all the facts and events related to the offense charged in this case. The limited purpose of this statement of facts is to demonstrate that a factual basis exists to support the defendant's guilty plea to Count One of the Superseding Information.

AGREED TO AND STIPULATED on this 31 day of March, 2025.

_[signature]_
BARRY WEINSTEIN
Defendant

_[signature]_
DANIEL K. HAGOOD
Attorney for Defendant

CHAD E. MEACHAM
ACTING UNITED STATES ATTORNEY

_[signature]_
MARTY BASU
Assistant United States Attorney
Illinois Bar No. 6302360
Email: marty.basu@usdoj.gov
DONNA STRITTMATTER MAX
Assistant United States Attorney
Texas Bar No. 24041984
Email: donna.max@usdoj.gov
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Tel: (214) 659-8600
Fax: (214) 659-8809