**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| | § | |
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **AMIR MORTAZAVI (01)** | § | **CASE NO.  3:24-CR-00049-S** |
| **ROBERT LEISTEN (05)** | § | |
| **ERIC BERKMAN (09)** | § | |
| **JORGE CUZA (10)** | § | |
| **JAMES ELLIS (12)** | § | |
| **WALTER STRASH (13)** | § | |
| **DAVID WOLF (14)** | § | |

<u>**MOTION TO DISMISS INDICTMENT AND MEMORANDUM IN SUPPORT**</u>

## TABLE OF CONTENTS

I.     INTRODUCTION ...........................................................................................1

II.    FACTUAL BACKGROUND ........................................................................2

     A.    Next Health ......................................................................................3

     B.    Altus ................................................................................................4

III.   LEGAL STANDARD....................................................................................5

IV.   ARGUMENTS AND AUTHORITIES.........................................................6

     A.    Count One is Impermissibly Duplicitous in Violation of the Fifth and Sixth Amendments and Must Be Dismissed............................................6

          1.    Count One is duplicitous because it charges an offense under two separate statutes that require different proof...................................7

          2.    Count One is duplicitous because it improperly combines allegations of two distinct "conspiracies."....................................9

     B.    This Prosecution of Defendants Based on the Alleged Next Health Conspiracy is Barred by the Statute of Limitations. ...............................13

     C.    Counts One and Two Lack Sufficient Allegations to Support the Required Underlying Violation of the TCBS. .......................................................15

     D.    Count Two is Unsupported by Any Allegations that the Defendants Knew the Unlawful Purpose of the Financial Transactions. .............................17

V.    CONCLUSION............................................................................................18

VI.   REQUEST FOR ORAL ARGUMENT .......................................................18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Daniels v. State*,
  754 S.W.2d 214 (Tex. Crim. App. 1988)................................................................16

*Goss v. State*,
  582 S.W.2d 782 (Tex.Cr.App. 1979).....................................................................15

*Grunewald v. United States*,
  353 U.S. 391 (1957).................................................................................................9

*Hamling v. United States*,
  418 U.S. 87 117–18 ...............................................................................................17

*Ledesma v. State*,
  677 S.W.2d 529 (Tex.Cr.App., 1984)...................................................................15

*Ex parte Mattox*,
  683 S.W.2d 93 (Tex. App-Austin 1984) pet ref'd, 685 S.W.2d 53 (Tex. Crim.
  App. 1985) .............................................................................................................15

*Pfleging v. State*,
  572 S.W.2d 517 (Tex.Cr.App. 1978).....................................................................15

*Russell v. United States*,
  369 U.S. 749 (1962).................................................................................................8

*Smith v. United States*,
  568 U.S. 106 (2013)...............................................................................................13

*State v. Doyal*,
  589 S.W.3d 136 (Tex. Crim. App. 2019)................................................................9

*United States v. Barrington*,
  648 F.3d 1178 (11th Cir. 2011) ..............................................................................7

*United States v. Burfoot*,
  899 F.3d 326 ............................................................................................................8

*United States v. Busch*,
  Case No. 3:19-cr-79, 2018 WL 5312759 (S.D. Ohio Oct. 25, 2018) ......................7

*United States v. Cabrera-Teran*,
   169 F.3d 141 (5th Cir. 1999), *overruled on other grounds as recognized in United States v. Longoria*, 298 F.3d 367 (5th Cir. 2002) (*en banc*) (*per curiam*) ...................................................................................................................7

*United States v. Cihak*,
   137 F.3d 252 (5th Cir. 1998) ...............................................................10, 12

*United States v. Dale*,
   782 F. Supp. 615 (D.D.C. 1991) ..........................................................16

*United States v. Davis*,
   53 F.4th 833 (5th Cir. 2022) ..................................................................8

*United States v. Davis*,
   533 F.2d 921 (5th Cir. 1976) ................................................................12

*United States v. Duffey*,
   456 Fed. Appx. 434 (5th Cir. 2012) ....................................................9, 12

*United States v. El-Mezain*,
   664 F.3d 467 (5th Cir. 2011) .............................................................10, 12

*United States v. Fairley*,
   880 F.3d 198 (5th Cir. 2018) .................................................................5

*United States v. Flores*,
   404 F.3d 320 (5th Cir. 2005), abrogated on other grounds, *United States v. Garcia*, 707 F. App'x 231 (5th Cir. 2017) ...........................................5, 6

*United States v. Fontenot*,
   665 F.3d 640 (5th Cir. 2011) .................................................................6

*United States v. Goldberg*,
   401 F.2d 644 (2d Cir. 1968)................................................................14

*United States v. Heard*,
   709 F.3d 413 (5th Cir. 2013) ...............................................................13

*United States v. Hillie*,
   227 F. Supp. 3d 57 (D.C. Cir. 2017)..............................................16, 17

*United States v. Kaluza*,
   Crim. A. No. 12-265, 2013 WL 6490341 (E.D. La. Dec. 10, 2013), *aff'd in part*, 780 F.3d 647 (5th Cir. 2015) ..........................................................6

*United States v. LaBrunerie*,
   914 F. Supp. 340 (W.D. Mo. 1995) ......................................................17

*United States v. Lawrence*,
727 F.3d 386 (5th Cir. 2013) ....................................................................5

*United States v. Loe*,
248 F.3d 449 (5th Cir. 2001) ....................................................................9

*United States v. Mauskar*,
557 F.3d 219 (5th Cir. 2009) ....................................................................7

*United States v. Mitchell*,
484 F. 3d 762 (5th Cir. 2007) ...................................................................9

*United States v. Morgan*,
117 F.3d 849 (5th Cir. 1997) ....................................................................9

*United States v. Morrow*,
177 F.3d 272 (5th Cir. 1999) (*per curiam*) ...............................................9

*United States v. Palfrey*,
499 F. Supp. 2d 34 (D.D.C. 2007) ..........................................................17

*United States v. Papa*,
533 F.2d 815 (2d Cir. 1976).....................................................................10

*United States v. Rafoi*,
60 F.4th 982 (5th Cir. 2023) .....................................................................5

*United States v. Ramamoorthy*,
949 F.3d 955 .............................................................................................8

*United States v. Robin*,
693 F.2d 376 (5th Cir. 1982) ....................................................................6

*United States v. Sanjar*,
876 F.3d 726 (5th Cir. 2017) ....................................................................7

*United States v. Schorovsky*,
202 F.3d 727 (5th Cir. 2000) ..................................................................14

*United States v. Shortt Acct. Corp.*,
785 F.2d 1448 (9th Cir. 1986) ..................................................................6

*United States v. Sperling*,
506 F.2d 1323 (2d Cir. 1974)...................................................................10

*United States v. US Gypsum Co.*,
438 U.S. 422 (1978)..................................................................................13

*United States v. USPlabs, LLC,*
   338 F. Supp. 3d 547 (N.D. Tex. 2018) ...........................................................5

*United States v. Warner,*
   690 F. 2d 545 (6th Cir. 1982) ......................................................................9

## CONSTITUTION AND STATUTES

18 U.S.C. § 371 ..................................................................................... *passim*

18 U.S.C. § 1343 ...............................................................................................2

18 U.S.C. § 1346 ...............................................................................................2

18 U.S.C. § 1347 ...............................................................................................3

18 U.S.C. §1349 .................................................................................... *passim*

18 U.S.C. § 1952 ...............................................................................................2

18 U.S.C. § 1956(h) ..........................................................................................2

18 U.S.C. § 3282(a) ........................................................................................12

Fifth Amendment ..........................................................................................7, 8

Sixth Amendment ...............................................................................2, 5, 8, 16

Tex. Occ. Code § 102.001(a) ...........................................................................2

Tex. Penal Code § 32.43 .......................................................................1, 2, 15

Texas Health and Safety Code Section 481.112 ...........................................16

Texas Penal Code Section 32.43(b) ...............................................................15

Travel Act ...........................................................................................1, 2, 6, 8

U.S. Const. Amend. VI .....................................................................................5

## OTHER AUTHORITIES

1 Charles A. Wright, Federal Practice and Procedure § 142 (2d ed. 1982)......................6

Fed. R. Crim. P. 6(a)(1) ....................................................................................8

Fed. R. Crim. P. 6(f) .........................................................................................8

Fed. R. Crim. P. 7(c)(1) ....................................................................................5

Fed. R. Crim. P. 12 ........................................................................................................1

Fed. R. Crim. P. 12(b)(3)(B)(i) ......................................................................................6

Local Rule 47.1(g) ........................................................................................................18

5 Wayne R. LaFave, et al., *Criminal Procedure*, § 19.3(d) (4th ed. 2015 & Nov. 2024 update)..............................................................................................................6, 8

Pursuant to Federal Rule of Criminal Procedure 12, Defendants Amir Mortazavi, Dr. Robert Leisten, Dr. Jorge Cuza, Dr. James Ellis, Dr. Walter Strash, Dr. Eric Berkman, and Dr. David Wolf (collectively, "Defendants") respectfully move this Court to dismiss the Indictment [Doc. 1] (the "Indictment") against them and state in support as follows:

## I.    INTRODUCTION

The Government's two-count Indictment contains several fundamental defects.  First, Count One is duplicitous to the extent it charges Defendants with two distinct and separate offenses (*i.e.*, a conspiracy to violate the Travel Act under U.S.C. § 371 and a conspiracy to commit wire fraud under 18 U.S.C. §1349) and because it charges multiple conspiracies in a single count in an attempt to make an end run around the five-year statute of limitations. In so doing, Count One ignores the many material distinctions between the alleged kickback scheme that centered around Next Health, LLC, from 2013 to 2018 and the kickbacks allegedly initiated by Altus from 2017 to 2019 – including distinct time periods, business models, agreements, compliance measures, business entities, and individuals.  Because the money laundering charge in Count Two is predicated upon violating the law as charged in Count One, it is, likewise, impermissibly duplicitous.  Count Two also fails to articulate an offense because the Indictment does not allege the individual Defendants had the requisite knowledge, that is, that they knew that the property involved represented the proceeds of some form of unlawful activity and because it does not allege the individual Defendants had the requisite knowledge to have joined the alleged money laundering conspiracy.

Further, Counts One and Two both fail to properly allege the requisite elements necessary to establish a violation of the Texas Commercial Bribery Statute (Tex. Penal Code § 32.43, "TCBS") required to support its travel act conspiracy claim.

As discussed below, these defects require dismissal of the Indictment in its entirety based on the Defendants' Fifth and Sixth Amendment rights.

## II.    FACTUAL BACKGROUND

On February 21, 2024, the Government issued a two-count indictment against fourteen defendants. Count One charged the Defendants with conspiracy to violate the Travel Act (18 U.S.C. §§ 371, 1952) by violating the Texas Commercial Bribery Statute (Tex. Penal Code § 32.43, "TCBS") **and** conspiracy to commit wire fraud by depriving patients of their intangible right to honest services (18 U.S.C. §§ 1343, 1346, 1349); Count Two charged Defendants (other than Defendant Walter Strash) with conspiracy to commit money laundering (18 U.S.C. § 1956(h)).[1] *See* Doc. 1. Both counts stem from alleged kickbacks paid to physician investors in return for the referral of prescriptions to certain pharmacies. The allegations pertaining to Count One reach back over ten years with many of the allegations occurring outside the applicable five-year statute of limitations; Count Two relates only to payments allegedly made between 2017 and 2019.

Tellingly, the "Overall Scheme" of the Indictment is separated into two sections: (1) "Next Health (2013–2018)" and (2) "Altus/Pharma Select (2017–2019)." *Id.* at ¶¶ 6–26. These headings belie the Government's claims that the allegations in the Indictment comprise a single conspiracy involving executives at several companies and hundreds of doctors who invested in dozens of pharmacies, most of whom never met each other or the executives. Combining these conspiracies is a blatant attempt to avoid the statute of limitations that would otherwise bar charges tied to Next Health (whether through the Travel Act or wire fraud statute, both of which have a five year statute of limitations).

---

[1] The Indictment also dedicates half of one page to the Texas Anti-Patient Solicitation Act (Tex. Occ. Code § 102.001(a); "TAPSA"), even though TAPSA is not an element of any crime charged. *Id* ¶ 3. Because this language risks prejudicing and confusing the jury, Defendants intend on filing a separate motion to strike such surplusage from the Indictment if the Indictment is not dismissed.

Count Two of the Indictment (conspiracy to commit money laundering) relates only to the Altus time period. Count Two alleges that thirteen of the fourteen defendants engaged in a conspiracy to launder the proceeds of the alleged conspiracies charged in Count One "and/or" a conspiracy to commit healthcare fraud (18 U.S.C. §§ 1347, 1349) through a series of financial transactions involving a combination of entities. *Id.* at ¶¶ 33-38.

Thus, the Government's two-charge Indictment would have this Court instruct the jury on at least four different legal theories of conspiracy, which is likely to result in confusion for the jury and undue prejudice to Defendants.

## A.    Next Health

The Indictment alleges that, from in or around 2013 to 2018, the now-defunct holding company Next Health "owned and controlled numerous other entities including pharmacies." *Id.* at ¶ 6. Although Mr. Mortazavi is alleged to have held "various leadership roles" in Next Health, the company was "principally controlled by" unindicted co-conspirators Andrew Hillman and Semyon Narosov, who "directed the activities of Next Health until at least July 2018," along with other un-indicted co-conspirators and board members of the company. *Id* at ¶¶ 7-9.

From 2013 to 2018, Next Health allegedly made payments to physician investors who referred prescriptions covered by commercial insurers[3] to certain pharmacies as returns on the physicians' investments in various entities, including:

> (1)  Class A pharmacies owned by Next Health, including Cor Pharma, LLC, and Total Pharmacy;
>
> (2)  Class G pharmacies owned by Next Health, including Hilltree Pharmacy, LLC; and
>
> (3)  Managed Services Organizations ("MSOs") operated by Med Left, LLC, and unindicted co-conspirator Vinson Woodlee.

---

[3] The Indictment does not allege that payments were made by government payors or that these partially physician-owned investments resulted in harm to the public fisc.

*Id.* at ¶¶ 30(a)-(d). The Indictment also alleges two other Next Health pharmacies, The Apothecary Shop and Parkwood Pharmacy, indirectly paid certain referring physicians or members of their households for prescription referrals. *Id.* at ¶ 30(h).

Importantly, the alleged overt acts tied to Next Health end in 2017 (or, taking the headings in the Government's Indictment as true, 2018), thus falling outside the five-year statute of limitations for an indictment returned in 2024. Moreover, Mr. Mortazavi – the lone remaining executive defendant – voluntarily resigned from Next Health in February 2017 and soon after surrendered all interest in the company, thus withdrawing from the alleged Next Health conspiracy.

## B.    Altus

The Government alleges that, following Mr. Mortazavi's resignation from Next Health, Mr. Mortazavi, Arvin Zeinali, and unindicted co-conspirator Vinson Woodlee "moved a large share of Next Health's illegal pharmacy business" to Altus. *Id.* at ¶ 12. At the same time, the Indictment makes clear that the leaders of Next Health, Mr. Hillman and Mr. Narosov, stayed behind, along with the rest of Next Health's executive team. *See id.* at ¶ 7. Thus, while the Indictment alleges that Altus and Next Health were "related entities," they were in fact competitors after Mr. Mortazavi left Next Health in 2017. *See id.* at ¶¶ 7, 31(w) (quoting email from Dr. Leisten in which he allegedly warns other physicians a pharmacy tied to Next Health is trying to poach Altus's business). This critical fact—along with the remainder of the Indictment—stands the notion of a single conspiracy on its head.

Notably, the Indictment does not allege that Altus had Class A pharmacies or Class G pharmacies, nor does the Government allege that Altus made payments to physicians' family members. *Compare, e.g., id.* at ¶ 30(h) (regarding Next Health) *with id.* at ¶¶ 30(t)-(hh) (regarding Altus). Rather, the Indictment alleges only that Mr. Woodlee "funnel[ed] bribe and kickback

payments from Altus to physicians" through new MSOs, including Defendants Trinity Champion Healthcare Partners, LLC, and Hexamed Business Solutions, LLC. *Id.* at ¶ 14. In other words, the overt acts that the government claims occurred at Altus from 2017 to 2018 were in no way related to Next Health or the conspiracy of which the government alleges Next Health was the center from 2013 to, at the latest, 2018.

### III.   LEGAL STANDARD

An indictment must give proper notice to the accused by satisfying the constitutional protections found in the Sixth Amendment, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. CONST. AMEND. VI. "The purpose of an indictment is to allege each essential element of the offense charged so as to enable the accused to prepare his defense and to allow the accused to invoke the double jeopardy clause in any subsequent proceeding." *United States v. USPlabs, LLC*, 338 F. Supp. 3d 547, 557 (N.D. Tex. 2018) (quoting *United States v. Lawrence*, 727 F.3d 386, 397 (5th Cir. 2013). An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . ." Fed. R. Crim. P. 7(c)(1). "An indictment is legally sufficient if (1) each count contains the essential elements of the offense charged, (2) the elements are described with particularity, and (3) the charge is specific enough to protect the defendant against a subsequent prosecution for the same offense." *United States v. Rafoi*, 60 F.4th 982, 993 (5th Cir. 2023) (citing *United States v. Fairley,* 880 F.3d 198, 206 (5th Cir. 2018)).

A district court may rule on a pretrial motion to dismiss where the dispositive facts are not in dispute. *See United States v. Flores*, 404 F.3d 320, 324–25 (5th Cir. 2005), abrogated on other grounds, *United States v. Garcia*, 707 F. App'x 231 (5th Cir. 2017). Moreover, "a district court may make preliminary findings of fact necessary to decide the questions of law presented by pretrial motions so long as the court's findings on the motion do not invade the province of the

ultimate finder of fact." *Flores*, 404 F.3d at 324 n.6 (*citing United States v. Shortt Acct. Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986)).*United States v. Kaluza*, Crim. A. No. 12-265, 2013 WL 6490341, at *2 (E.D. La. Dec. 10, 2013) (citing *Flores* and holding that "the court may 'make preliminary findings of fact' so long as those findings 'do not invade on the province of the ultimate finder of fact or are undisputed'"), *aff'd in part*, 780 F.3d 647 (5th Cir. 2015). This is true even if the facts relevant to the motion go beyond the face of the indictment. *See United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (relying on undisputed but extrinsic documentary evidence to decide a pretrial motion to dismiss the indictment); *see also Flores*, 404 F.3d at 324 (rejecting Government's argument that the court cannot "look beyond the face of the indictment").

## IV.    ARGUMENTS AND AUTHORITIES

### A.    Count One is Impermissibly Duplicitous in Violation of the Fifth and Sixth Amendments and Must Be Dismissed.

An indictment must not be duplicitous, meaning that it may not join in a single count, two or more distinct and separate offenses. *United States v. Robin*, 693 F.2d 376 (5th Cir. 1982). "An indictment is impermissibly duplicitous when it "join[s] two or more offenses in the same count." Fed. R. Crim. P. 12(b)(3)(B)(i). Duplicity is "unacceptable because it prevents the jury from deciding guilt or innocence on each offense separately, and may make it difficult to determine whether the conviction rested on only one of the offenses or both." 5 Wayne R. LaFave, et al., *Criminal Procedure*, § 19.3(d) (4th ed. 2015 & Nov. 2024 update).[4]

Here, Count One is impermissibly duplicitous for two reasons: first, it combines alleged violations of two separate types of conspiracy under two separate laws into one count (*i.e.*, the Travel

---

[4] The ban against duplicitous indictments derives from four concerns: prejudicial evidentiary rulings at trial; the lack of adequate notice of the nature of the charges against the defendant; prejudice in obtaining appellate review and prevention of double jeopardy; and risk of a jury's nonunanimous verdict. *See generally* 1 Charles A. Wright, Federal Practice and Procedure § 142 (2d ed. 1982).

Act and the wire fraud statute); second, it combines the alleged facts constituting two distinct conspiracies into one count, thereby skirting the statute of limitations that would otherwise bar prosecution of the earlier (Next Health) conspiracy.

> ### 1.    Count One is duplicitous because it charges an offense under two separate statutes that require different proof.

"Alleging a conspiracy under both 18 U.S.C. §§ 371 and 1349 is impermissibly duplicitous." *United States v. Busch,* Case No. 3:19-cr-79, 2018 WL 5312759, at *1 (S.D. Ohio Oct. 25, 2018) (citing *United States v. Barrington*, 648 F.3d 1178, 1189–90 (11th Cir. 2011)).

Count One does exactly that and, as a result, must be dismissed. *Id.*

To be clear, an indictment may charge a conspiracy that has various statutory objectives under a single statute, such as 18 U.S.C. § 371, without rendering the charge duplicitous. *See, e.g., United States v. Mauskar*, 557 F.3d 219, 225 (5th Cir. 2009). However, by charging **two separate conspiracy statutes** (*i.e.*, 18 U.S.C. §§ 371 and 1349) in Count One, the Government has rendered that count duplicitous. *See, e.g., Busch*, 2018 WL 5312759, at *1. This is because, as the Fifth Circuit has recognized, Sections 371 and 1349 require different proof. *See United States v. Sanjar,* 876 F.3d 726, 737 (5th Cir. 2017). For example, "Section 371 … requires an overt act, which Section 1349 does not." *Id.* This is especially prejudicial where the two offenses carry disparate statutory penalties, as they do here: Section 371 carries a maximum sentence of five years' imprisonment, while Section 1349 carries a maximum of 20 years. *See* 18 U.S.C. §§ 371, 1349.

In light of this duplicity, it is impossible to determine whether the grand jury found probable cause as to *either* of the offenses charged in Count One.  As the Court is aware, "one of the central purposes of an indictment [is] to ensure that the grand jury finds probable cause that the defendant has committed each element of the offense, hence justifying a trial, as required by the Fifth Amendment." *United States v. Cabrera-Teran*, 169 F.3d 141, 143 (5th Cir. 1999) (footnote omitted),

*overruled on other grounds as recognized in United States v. Longoria*, 298 F.3d 367, 372 & n.6 (5th Cir. 2002) (*en banc*) (*per curiam*). A finding of probable cause requires that, of the 16 to 23 grand jurors seated, *see* Fed. R. Crim. P. 6(a)(1), "at least 12" must concur as to each count. *See* Fed. R. Crim. P. 6(f). "To…make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention was designed to secure." *Russell v. United States,* 369 U.S. 749, 770 (1962). Here, it is impossible to determine whether at least 12 of the grand jurors concurred that the Defendants violated Section 371 or whether at least 12 of the grand jurors concurred that the Defendants violated the wire fraud statute. Thus, any remedy other than dismissal of Count One will violate the Defendants' Fifth Amendment right to grand jury determination.

The two separate offenses charged in Count One also risk violating the Sixth Amendment guarantee of a unanimous jury verdict at trial. *See, e.g., United States v. Ramamoorthy*, 949 F.3d 955, # (2020); *United States v. Burfoot*, 899 F.3d 326, # (2018). As charged, Count One could result in a conviction based upon six jurors agreeing a defendant committed a Travel Act conspiracy under 18 U.S.C. § 371 and another six jurors agreeing that same defendant committed a wire fraud conspiracy under 18 U.S.C. § 1349. If the jury is not able to reach a verdict or issues a conviction that is later overturned, Defendants "may be subjected to a second trial that exposes [them] to double jeopardy insofar as it includes an offense on which the original jury would have acquitted if required to render separate verdicts." *LeFave*, *supra*, at § 19.3(d).

Because the money laundering charge in Count Two is premised upon the conduct charged in Count One as the "specified unlawful activity," it is, likewise, duplicitous and risks a less-than-unanimous jury verdict.[5] *See* Doc. 1 at ¶ 33; *see also United States v. Davis*, 53 F.4th 833, 847 (5th Cir. 2022) (affirming that money laundering requires an indictment to show that the money was

"derived from a particular set of federal crimes") (quoting *United States v. Loe*, 248 F.3d 449, 468 (5th Cir. 2001). For these reasons, both counts are fatally flawed and should be dismissed.

    **2.**    ***Count One is duplicitous because it improperly combines allegations of two distinct "conspiracies."***

To avoid duplicity issues, an indictment may not charge multiple factual conspiracies in a single count. *United States v. Morrow*, 177 F.3d 272, 291 (5th Cir. 1999) (*per curiam*). "The principal considerations in counting the number of conspiracies are (1) the existence of a common goal; (2) the nature of the scheme; and (3) the overlapping of the participants in the various dealings." *Id.* (citing *United States v. Morgan*, 117 F.3d 849, 858 (5th Cir. 1997)). "In order to prove a single conspiracy, the Government must show that each alleged member agreed to participate in what he knew to be a collective venture directed toward a common goal." *United States v. Warner*, 690 F. 2d 545 (6th Cir. 1982). Further, the existence of a single conspiracy can only be inferred where the "activities of one aspect of the scheme are necessary or advantageous to the success of another aspect or to the overall success of the venture." *United States v. Mitchell*, 484 F. 3d 762, 770 (5th Cir. 2007). This is less likely to be the case if the conspiracies "did not exist in any overlapping or simultaneous time frame" and "separate and distinct evidence supports each conspiracy count." *United States v. Duffey*, 456 Fed. Appx. 434, 440-41 (5th Cir. 2012).

A court may find that even agreements connected by key conspirators are separate conspiracies, particularly where the timing of the conspiracy is sufficiently long to suggest the existence of separate agreements. *Cf. id.* at 440-442 (evidence supported finding of multiple conspiracies to rob banks over a time frame of six months even though all conspiracies had three bank robbers in common, two of whom had "major responsibilities in the planning of the crimes"). For decades, the United States Supreme Court and Texas courts have warned they disfavor attempts by the Government to broaden the already pervasive and wide-sweeping nets of conspiracy

prosecutions. *See, e.g., Grunewald v. United States*, 353 U.S. 391, 404 (1957); *State v. Doyal*, 589 S.W.3d 136, 148 n.54 (Tex. Crim. App. 2019). "While it is obviously impractical and inefficient for the Government to try conspiracy cases one defendant at a time, it has become all too common for the Government to bring indictments against a dozen or more defendants and endeavor to force as many of them as possible to trial in the same proceeding on the claim of a single conspiracy when the criminal acts **could be more reasonably regarded as two or more conspiracies**." *United States v. Papa*, 533 F.2d 815, 821 (2d Cir. 1976) (emphasis added) (citing *United States v. Sperling*, 506 F.2d 1323, 1340-41 (2d Cir. 1974).

Here, the Government's pleading of Count One is a deliberate attempt to avoid the five-year statute of limitations, which would otherwise bar the allegations related to the alleged Next Health Conspiracy, all of which occurred **before** 2019 and, thus, more than five-years prior to the Indictment's issuance on February 21, 2024. Taking the Government's allegations as true, there are at least two separate conspiracies alleged in this case: the Next Health Conspiracy and the Altus Conspiracy.[6]

The most obvious distinction between the two alleged hub and spoke conspiracies are their "hubs":  Next Health and Altus are two distinct entities, as the Government admits. The Government vaguely alleges the two entities were "related"—while at the same time admitting the entities were competitors during the purported Altus conspiracy. In fact, Altus voided a single, unrelated agreement between the two entities in or before 2017 due to compliance concerns. Doc. 1 at ¶ 12. As explained above, the Indictment makes clear these two entities were in fact competitors in 2017 and 2018 (at which point Next Health ceased to exist). *See, e.g.*, Doc. 1 at ¶¶ 7, 31(w). As the Fifth Circuit has noted, a key consideration in determining whether conspiracies are separate is whether the actions one conspiracy advanced the goals of the other, and vice versa. *United States v. Cihak*,

137 F.3d 252, 258 (5th Cir. 1998); *United States v. El-Mezain*, 664 F.3d 467, 549 (5th Cir. 2011), as revised (Dec. 27, 2011). Here, where the supposed single conspiracy involved competing entities, they not only did not – *but could not*.

In addition, while certain spokes overlap, many do not – both in terms of the executives at Next Health and Altus (*e.g.*, Mr. Hillman and Mr. Narosov) and the physician investors who allegedly received kickbacks. The Government cherry picks physicians who allegedly received payments from both Altus and Next Health, while ignoring the many who did not. Indeed, discovery in this case indicates hundreds of other doctors may have received payments on their investments with Next Health or Altus pharmacies but were not charged. Other distinctions include, but are not limited to, the following:

| | Alleged Next Health Conspiracy | Alleged Altus Conspiracy |
|---|---|---|
| **Alleged Time Period** | 2013 – 2018*<br>*Mr. Mortazavi voluntarily resigned in 2017 | 2017 – 2019 |
| **Alleged Payment Methods** | <ul><li>Class A Pharmacies</li><li>Class G Pharmacies</li><li>MSOs</li><li>Alleged payments to physician's family members</li><li>Medical director agreements</li></ul> | <ul><li>New MSOs</li><li>Money laundering through Raintree entity</li></ul> |
| **Alleged Divestment of Physicians** | Allegedly divested low-prescribing physicians from investment vehicles | Government does not allege divestment of physicians from investment vehicles |
| **Pharmacy Benefit Managers ("PBMs")** | No allegation of fraud involving PBMs | Allegedly reimbursed over $3 million from PBMs for illegal prescriptions |
| **Compliance Measures** | <ul><li>Different attorneys, written legal opinions, and internal compliance measures</li><li>Different contractual agreements with investors and marketers, as prepared by counsel</li></ul> | <ul><li>Different attorneys, written legal opinions, and internal compliance measures, which reflect evolved understanding of relevant law throughout health care industry</li><li>Different contractual agreements with investors and marketers, as prepared by counsel</li></ul> |

It is not sufficient that the conspiracies involved some of the same individuals and potentially similar schemes. *See Duffey*, 456 Fed. App'x. at 440 (noting that even though several bank robberies occurred that involved many of the same individuals, the evidence showed that the group "planned the second robbery only after the first robbery was unsuccessful, because they had not netted sufficient loot" and there was no chronological overlap in planning the crimes). Without an overarching agreement connecting the conspiracies, the government's allegations support a finding of two separate conspiracies that merely involve a few of the same individuals. *See id.* ("Thus, the evidence shows that two separate agreements were reached hours apart, to rob different banks on the same day.... [and] they presented no evidence of a single, umbrella-agreement, covering their myriad of criminal escapades."). The Government's decision to improperly merge two distinct conspiracies into a single count not only violates established legal principles but also poses a significant risk of prejudice to Defendants. By attempting to cast the activities of Next Health and Altus under the umbrella of one conspiracy, the Government blurs the lines between separate and unrelated actions, which is likely to result in issues regarding admissibility of evidence, as well as jury confusion. This is particularly problematic in complex cases like this, where the nuances of different business operations and compliance measures aimed at addressing a complex and rapidly evolving area of the law, are critical to a fair assessment of the facts.

In sum, the two alleged conspiracies involve materially different activities, agreements, entities, time periods, and alleged wrongdoings with no impact on one another. The conspiracies are separate. *See Cihak*, 137 F.3d at 258 (considering these factors); *El-Mezain*, 664 F.3d 467 at 549 (same).[7] Thus, Count One is duplicitous and should be dismissed. At the very least, the charges

---

[7] Importantly, the Fifth Circuit has found conspiracies to be separate even when there is significant overlap between the participants and other factors—if the end goal of the conspiracies was different. For instance, in *El-Mezain* the government alleged that money was illegally funneled to designated terrorists through the same organization—the Holy Land Foundation. However, because the intended beneficiaries were

related to the two conspiracies should be severed and the charge tied to Next Health dismissed for the reasons set forth below.

**B.**     **This Prosecution of Defendants Based on the Alleged Next Health Conspiracy is Barred by the Statute of Limitations.**

A charge of conspiracy under either legal theory posed in Count One (*i.e.*, 18 U.S.C. §§ 371 or 1349) is subject to a general five-year statute of limitations. *See* 18 U.S.C. § 3282(a). Thus, the Government "must allege and prove the commission of at least one overt act by one of the conspirators within [the five-year] period in furtherance of the conspiratorial agreement." *United States v. Davis*, 533 F.2d 921, 926 (5th Cir. 1976). Further, the statute of limitations may begin to run "when the defendant withdraws from the conspiracy." *United States v. Heard*, 709 F.3d 413, 427 (5th Cir. 2013) (citing *United States v. US Gypsum Co.*, 438 U.S. 422, 464 (1978)). Withdrawal "starts the clock running on the time within which the defendant may be prosecuted and provides a complete defense when the withdrawal occurs beyond the applicable statute-of-limitations period." *Smith v. United States*, 568 U.S. 106, 111 (2013).

Critically, the defense of withdrawal requires:

> the defendant to make a substantial showing that [he] took some *affirmative step to terminate or abandon [his] participation in the conspiracy*. In other words, the defendant must demonstrate some type of affirmative action that disavowed or defeated the purpose of the conspiracy. This would include, for example, voluntarily going to the police or other law enforcement officials and telling them about the plan; *telling the other conspirators that [he] did not want to have anything more to do with it*; or any other af*firmative acts that were inconsistent with the object of the conspiracy and communicated in a way reasonably likely to reach the other members*.

Fifth Circuit Pattern Jury Instruction No. 2.18 (2019) (emphasis added).  A defendant can establish withdrawal if he can demonstrate "affirmative acts inconsistent with the object of the conspiracy

---

different, the conspiracies were different. Here, the alleged conspiracies involve not only different beneficiaries, but also different entities, agreements, timeframes, and manners and means of facilitating the supposed kickbacks.

that are communicated in a manner reasonably calculated to reach conspirators." *United States v. Schorovsky*, 202 F.3d 727, 729 (5th Cir. 2000).

It is clear from the Indictment that the Government cannot prosecute violations related to the Next Health Conspiracy unless it can allege the *same* conspiracy continued at Altus and within the statute of limitations period. The Government fails to do so.

Because the Indictment was returned on February 21, 2024, the conspiracy must have occurred or continued beyond February 21, 2019. The latest overt act in furtherance of the Next Health Conspiracy alleged in the Indictment occurred in 2017 (or, taking the Government's heading as true, 2018). Doc. 1 at ¶¶ 6, 31(p). Thus, any alleged conspiracy involving Next Health ended outside of the five-year statute of limitations window preceding the Indictment and, for the reasons set forth in Section IV(A)(2), *supra*, did not continue at Altus.

Moreover, as set forth above, Mr. Mortazavi withdrew from the alleged Next Health conspiracy when he voluntary resigned from and expressly surrendered all interests in Next Health in 2017 – over a year outside of the statute of limitations window. *See United States v. Goldberg*, 401 F.2d 644, 649 (2d Cir. 1968) (resignation plus the absence of any subsequent activity in furtherance of the same conspiracy established withdrawal); *see also Schorovsky*, 202 F.3d at 729 (withdrawal effective where defendant voluntarily and affirmatively ceased involvement with conspiracy and informed at least one co-conspirator). Such resignation and surrender were a clear communication to Mr. Mortazavi's alleged co-conspirators, including Mr. Narosov and Mr. Hillman, that he wished to cease involvement with the alleged criminal enterprise. *See Id.*

Not only did Mr. Mortazavi withdraw from Next Health—but by the Government's own telling he joined Altus, a competitor of Next Health. Altus then began attempting to recruit physician investors in competition with Next Health. The Government takes the position that these

activities – which occurred one year later – somehow restarted the statute of limitations as to Next Health. This position turns logic on its head.

For the reasons set forth above, the Government's attempt to prosecute the alleged Next Health conspiracy, which ended in 2018 at the latest, is barred by the statute of limitations.

## C.    Counts One and Two Lack Sufficient Allegations to Support the Required Underlying Violation of the TCBS.

Both Counts of the Indictment allege violations of the TCBS and incorporate descriptions of conduct constituting these the alleged violations as the manner, means, and overt acts that form the basis of the counts. The Indictment contains the following brief description of the Texas Commercial Bribery Statute:

> Under Texas Penal Code Section 32.43, which outlaws commercial bribery, a physician owes a fiduciary duty to his patients and commits an offense if, without the consent of his or her patients, intentionally or knowingly solicits, accepts, or agrees to accept any benefit from another person on agreement or understanding that the benefit will influence the conduct of the physician in relation to the affairs of his or her patients.

This language seeks to summarize and restate the content of Texas Penal Code Section 32.43(b) as it would apply in the relationship between a physician and his/her patient. However, it is misleadingly incomplete.  While this is a technically accurate recitation of the TCBS, it fails to reflect the effect of certain definitional language provided by Texas law.  The relevant case law necessarily creates an additional element the Government must also satisfy to establish a violation of the TCBS has occurred.

In *Ex parte Mattox*, the court elucidated those circumstances under which a violation of the TCBS occurs:

> Section 32.43(c) is not a strict liability statute. It criminalizes only those offers the acceptance of which would violate subsection (b). Subsection (b), in turn, criminalizes the acceptance of a benefit only if it is in consideration for a breach of a fiduciary duty. Obviously,

one can offer a benefit in consideration for a breach of a fiduciary duty only if one knows the offeree is a fiduciary, and that he would violate a duty owed to his beneficiary or otherwise cause harm to his beneficiary by accepting the offered benefit. Thus, the State must prove such knowledge in a prosecution pursuant to s 32.43(c).

*Ex parte Mattox*, 683 S.W.2d 93, 97 (Tex. App-Austin 1984) pet ref'd, 685 S.W.2d 53 (Tex. Crim. App. 1985) (citing *Pfleging v. State,* 572 S.W.2d 517 (Tex.Cr.App. 1978); *Ledesma v. State*, 677 S.W.2d 529 (Tex.Cr.App., 1984); *Goss v. State*, 582 S.W.2d 782 (Tex.Cr.App. 1979)).

This seminal ruling substantially narrows the circumstances under which a violation of the law occurs.[2] Here, with regard to the prosecution of a party accused of acting as the offeror of an illicit benefit, it is clear that, under Texas law, the Government must show the offeror of the benefit knows the physician is a fiduciary **and** that the physician would be violating a duty owed to his patient or otherwise be causing harm to his patient by accepting the benefit. Further, the Government must show that the physician knowingly accepts the benefit with the knowledge that he would be violating a duty owed to his patient or otherwise be causing his patient harm.

The Government's recitation of the TCBS fails to reflect these requisite circumstances and allows a juror to provide his own definition of those instances when a benefit will "influence the conduct of the conduct of the physician in relation to the affairs of his or her patients." In light of

---

[2] Defendants submit that the *Mattox* court's clarification of what constitutes criminality under the statute at issue effectively creates additional elements the government must prove. The creation of an element of proof via case law is not without precedent in Texas law. See, for example, the prosecution of a constructive delivery of a controlled substance pursuant to Texas Health and Safety Code Section 481.112. The statutory elements of the offense provide that a person commits an offense if the person knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance. The definition of delivery provides that the term means to transfer actually or constructively to another. Case law, however, has established that the definition of constructive delivery additionally requires "the transferor to at least be aware of the existence of the ultimate transferee before delivery." *Daniels v. State,* 754 S.W.2d 214 (Tex. Crim. App. 1988) at 221. Proof that the accused knows of the existence of an intended eventual recipient is now a requisite part of every constructive delivery prosecution and every properly constructed jury charge.

the foregoing, the Indictment should be dismissed because it fails to accurately state the requisite elements of the underlying offense charged.

**D.      Count Two is Unsupported by Any Allegations that the Defendants Knew the Unlawful Purpose of the Financial Transactions.**

To meet the requirements of the Sixth Amendment, "an indictment must contain every element of the offense charged and must fairly apprise the accused of the conduct allegedly constituting the offense so as to enable him to prepare a defense against those allegations." *United States v. Hillie*, 227 F. Supp. 3d 57, 70 (D.C. Cir. 2017) (citing *United States v. Dale*, 782 F. Supp. 615, 621 (D.D.C. 1991)). "The language of the statute may be used in the [government's] general description of an offen[s]e, **but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offen[s]e**, coming under the general description, with which he is charged." *Id.* (quoting *Hamling v. United States.,* 418 U.S. 87 117–18) (emphasis added). Courts have found that it is especially important to include such facts and circumstances in cases where; by solely tracking the statutory language, the indictment's terms create ambiguity regarding the defendant's conduct. *Id.* at 71 (citing *United States v. Palfrey*, 499 F. Supp. 2d 34, 45 (D.D.C. 2007)).

Further, for the Government to ultimately prove a conspiracy offense, it must establish "the defendant's knowledge of the unlawful objective and voluntary agreement to join the conspiracy." *United States of America v. Cockerell,* 140 F.4th 213, 220 (5th Cir. 2025) (internal quotations omitted). The Government has failed to allege that any of the Defendants possessed the requisite knowledge of the unlawful objectives of the financial transactions at issue. Count Two is devoid of any factual allegations to support the Defendants' involvement or knowledge in a scheme to **conceal** any financial transactions, and the conclusory allegations through which the Government merely reiterates the relevant statutory language are insufficient. *See, e.g., United States v.*

*LaBrunerie*, 914 F. Supp. 340, 346 (W.D. Mo. 1995) (dismissing charge because "by no reasonable construction can the indictment be said to charge the defendant with the offense of money laundering" despite containing relevant statutory language).

Instead, the Government simply describes another series of various payment structures, enacted by various physicians, MSOs and other entities, that each used different methods for alleged "kickbacks" and other payments. Doc. 1 at ¶¶ 33-38. There are no allegations that these acts were done to conceal those payments, much less that these varied structures were all part of a conspiracy of which more than a dozen defendants all had knowledge. *See id.* Indeed, the Indictment does not so much as allege that Mr. Mortazavi had knowledge of entities through which the money was allegedly laundered (*e.g.*, Raintree Healthcare Partners, LLC), much less their purpose.

As a result, Count Two of the Indictment should be dismissed.

## V.   CONCLUSION

Count One of the Indictment is impermissibly duplicitous because it wrongly charges (1) two separate offenses under the same count; and (2) two different conspiracies as a single conspiracy. Furthermore, the allegations related to Next Health are distinct and outside of the statute of limitations. Last, Count Two fails to articulate an offense because the Indictment does not allege that any of the Defendants had the requisite knowledge. Therefore, Defendants respectfully request the Court dismiss the Indictment.

## VI.   REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 47.1(g), Defendants request oral argument on the subject Motion and estimate that the Defendants will need one hour. Defendants believe oral argument will assist the Court in understanding the factual background giving rise to the Motion and the complexity of the legal issues addressed in the Motion.

Respectfully submitted,


*/s/ Paul E. Coggins*
Paul E. Coggins
Texas Bar No. 04504700
Jennifer M. McCoy
Texas Bar No. 24089805
Alexandra G. Lancey
Texas Bar No. 24141263
Kaci M. Jones
Texas Bar No. 24136933
TROUTMAN PEPPER LOCKE LLP
2200 Ross Avenue, Suite 2800
Dallas TX 75201
Tel. 214-740-8000
Fax. 214-740-8800
**ATTORNEYS FOR DEFENDANT
AMIR MORTAZAVI (01)**


/s/ *Anthony Box*
Anthony Box
Texas Bar No. 24133857
abox@grayreed.com
Christopher A. Davis
Texas Bar No. 24050483
cdavis@grayreed.com
Angela L. Brown
Texas Bar No. 24034533
abrown@grayreed.com
GRAY REED
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Tel: (214) 954-4135
Fax: (214) 953-1332
**ATTORNEYS FOR ROBERT LEISTEN
(05)**

/s/ *Chip Lewis*
Chip Lewis
Texas Bar No. 00791107
chip@chiplewislaw.com
Erin Epley
Texas Bar No. 24061389
erin@epley-law.com
Dean Blumrosen
Texas Bar No. 02517900
dblumrosenlaw@gmail.com
Inger Chandler
Texas Bar No. 24041051
inger@ingerchandlerlaw.com
1207 S. Shepherd Dr.
Houston, Texas 77019
Tel: (713) 523-7878
**ATTORNEYS FOR ERIC BERKMAN (09)**

/s/ *David Gerger*
David Gerger
Texas Bar No. 07816360
dgerger@ghmfirm.com
Ashlee Martin
Texas Bar No. 24070243
amartin@ghmfirm.com
GERGER HENNESSY
MARTIN & PETERSON LLP
700 Louisiana, Suite 2300
Houston, Texas 77002
Tel: 713.224.4400
Fax: 713.224.5153
**ATTORNEYS FOR JORGE CUZA (10)**

/s/ *James T. Jacks*
James T. Jacks
Texas Bar No. 10449500
jim@jamesjackslaw.com
Ross Tower
500 N. Akard, Suite 2150
Dallas, TX. 75201
Tel: 214.237.0900
Fax: 214.237.0901 (facsimile)
**ATTORNEY FOR JAMES ELLIS (12)**

*/s/ Jeff Ansley*
Jeffrey J. Ansley
Texas Bar No. 00790235
jansley@vedderprice.com
Arianna G. Goodman
Texas Bar No. 24109938
agoodman@vedderprice.com
Katherine M. Devlin
Texas Bar No. 24094372
kdevlin@vedderprice.com
VEDDER | PRICE P.C.
300 Crescent Court, Suite 400
Dallas, Texas 75201
469.895.4790 (Ansley)
**ATTORNEYS FOR DEFENDANT**
**WALTER STRASH (13)**


/s/ Brandon N. McCarthy
Brandon N. McCarthy
Texas Bar No. 24027486
brandon.mccarthy@katten.com
Rachel M. Riley
Texas Bar No. 24093044
rachel.riley@katten.com
KATTEN MUCHIN ROSENMAN
2121 North Pearl Street, Suite 1100
Dallas, TX 75201
Tel: 214-765-3680
Fax: 214-765-3602
**ATTORNEYS FOR DEFENDANT**
**DAVID WOLF (14)**


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on October 20, 2025, the foregoing document was served on all

counsel of record via ECF in accordance with the Federal Rules of Civil Procedure.


*/s/ Jennifer M. McCoy*
Jennifer M. McCoy