IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| | |
| v. | No. 3:24-CR-049-S |
| | |
| AMIR MORTAZAVI  (01) | |
| ROBERT LEISTEN  (05) | |
| AMY HAASE  (06) | |
|  A/K/A AMY HAASE KERNE | |
| ARNOLD FARBSTEIN  (07) | |
| ERIC BERKMAN  (09) | |
| JORGE CUZA  (10) | |
| KATHREN MCCARTY  (11) | |
| JAMES ELLIS (12) | |
| WALTER STRASH  (13) | |
| DAVID WOLF  (14) | |

**GOVERNMENT'S RESPONSE TO**
**DEFENDANTS' MOTION TO DISMISS INDICTMENT**

Respectfully submitted,


NANCY LARSON
ACTING UNITED STATES ATTORNEY

*/s/ Marty Basu*
CHAD E. MEACHAM
Assistant United States Attorney
Texas Bar No. 00784584
Email: chad.meacham@usdoj.gov
MARTY BASU
Assistant United States Attorney
Illinois Bar No. 6302360
Email: marty.basu@usdoj.gov
ELISE ALDENDIFER
Texas Bar No. 24124103
Email:  elise.aldendifer@usdoj.gov
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Tel: (214) 659-8600
Fax: (214) 659-8809
**Attorneys for the United States**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ............................................................................................... 1

ARGUMENT.................................................................................................... 4

    A.    Count One is not duplicitous on either ground argued by the defense. ........ 5

        1.    Count One charges a two-object conspiracy under 18 U.S.C. § 371. 6

        2.    Count One only charges one long-running kickback conspiracy. ....... 7

    B.    Count One is not barred by the statute of limitations.................................. 13

    C.    The indictment sufficiently pleads a violation of both Count One and Two.
        ................................................................................................... 13

    D.    Count Two is wholly supported by allegations that the defendants knew the
        unlawful purpose of the financial transactions............................................ 15

CONCLUSION ............................................................................................... 18

# TABLE OF AUTHORITIES

## Cases

*United States v. Baytank (Houston), Inc.*, 934 F.2d 599 (5th Cir. 1991) ............................ 5

*United States v. Beauchamp et al.*, No. 3:16-CR-0051 (N.D. Tex 2016) ......................... 15

*United States v. Bell*, 911 F.2d 725, 1990 WL 116782 (4th Cir. 1990) .............................. 7

*United States v. Cabrera-Teran*, 168 F.3d 141, 143 (5th Cir. 1999) ................................. 16

*United States v. Chapman*, 851 F.3d 363, 378 (5th Cir. 2017) ........................................... 17

*United States v. Cihak*, 137 F.3d 252 (5th Cir. 1998) ......................................................... 11

*United States v. Davis*, 53 F.4th 833, 845 (5th Cir. 2022) ........................................... 15, 16

*United States v. Duffey*, 456 F. App'x 434 (5th Cir. 2012) ................................................ 11

*United States v. Elam*, 678 F.2d 1234 (5th Cir. 1982) ....................................................... 12

*United States v. El-Mezain*, 664 F.3d 467 (5th Cir. 2011) ........................................... 11, 12

*United States v. Faulkner*, 17 F.3d 745 (5th Cir. 1994) ................................................... 8, 9

*United States v. Lawrence*, 727 F.3d 386, 397 (5th Cir. 2013) ......................................... 14

*United States v. Lozano*, 158 F. App'x 632, 638 (5th Cir. 2005) ................................ 16, 17

*United States v. Medel-Guadalupe*, 987 F.3d 424 (5th Cir. 2021) ................................. 5, 7

*United States v. Morris*, 46 F.3d 410 (5th Cir. 1995 ................................................. 9, 10, 12

*United States v. Morrow*, 177 F.3d 272, 296 (5th Cir. 1999) ............................................. 14

*United States v. Payne*, 99 F.3d 1273 (5th Cir. 1996) ..................................................... 9, 11

*United States v. Perez*, 489 F.2d 51 (5th Cir. 1973) ........................................................... 11

*United States v. Prince*, 515 F.2d 564, 566 (5th Cir. 1975) .............................................. 15

*United States v. Richerson*, 833 F.2d 1147 (5th Cir. 1987) .............................................. 8, 9

*United States v. Rodriguez*, 585 F.2d 1234 (5th Cir.1978) ................................................. 8

*United States v. Shah*, 95 F.4th 328 (5th Cir. 2024) .......................................................... 15

*United States v. Simpson*, No. 3:09-CR-249-D, 2011 WL 2880885 (N.D. Tex. July 15, 2011 ........................................................................................................................... 5, 6, 7

*United States v. Thomas*, 348 F.3d 78, 82 (5th Cir. 2003) ................................................ 14

*United States v. Threadgill*, 172 F.3d 357 (5th Cir. 1999) ............................................... 16

*United States v. USPlabs, LLC*, 338 F. Supp. 3d 547, 557 (N.D. Tex. 2018) .................. 14

*United States v. Varg*as, 6 F.4th 624 (5th Cir. 2021) ......................................................... 13

## Statutes

18 U.S.C. § 1343 ............................................................................................................... 1, 6

18 U.S.C. § 1346 ............................................................................................................... 1, 6

18 U.S.C. § 1349 ..................................................................................................................... 6

18 U.S.C. § 1952 ............................................................................................................... 1, 6

18 U.S.C. § 1956(h) ............................................................................................ 1

18 U.S.C. § 371 ............................................................................................... 1, 6

Texas Penal Code § 32.43 ................................................................................. 1

**Other Authorities**

1 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* (4th ed. 2008) 5, 6

Fed. R. Crim. P. 7 ............................................................................................. 14

Fifth Circuit Pattern Jury Instruction 2.76(C) (2015) ....................................... 17

## INTRODUCTION

The United States of America hereby files this response in opposition to the defendants' Motion to Dismiss Indictment. (Dkt. No. 251). The defendants allege that Count One should be dismissed as duplicitous, and they claim Count One charges two distinct conspiracies in an apparent attempt to establish that part of the conspiracy is time-barred. Their arguments fail. Count One charges a single, multi-object conspiracy under one statute, brought well within the applicable limitations period. And even if the Court were to conclude that more than one offense is alleged, any such issue can be remedied through means short of dismissal. Moreover, contrary to defendants' assertions, each count in the indictment adequately pleads all essential elements of the charged offenses, making dismissal entirely unwarranted.

## BACKGROUND

On February 21, 2024, the grand jury returned a two-count indictment against fourteen defendants. (Dkt. No. 1 ("Indictment")). Count One charged the defendants with conspiracy to violate the Travel Act (18 U.S.C. §§ 371, 1952) by violating the Texas Commercial Bribery Statute (Tex. Penal Code § 32.43, "TCBS") and conspiracy to commit wire fraud by depriving patients of their intangible right to honest services (18 U.S.C. §§ 1343, 1346); Count Two charged defendants (other than Defendant Walter Strash) with conspiracy to commit money laundering (18 U.S.C. § 1956(h)).

The indictment alleges a broad conspiracy involving doctors, pharmacies, pharmacy executives, and marketers engaging in conduct to pay and receive kickbacks in

exchange for prescription referrals.  The overall scheme is set forth in Paragraph 5 of the

indictment and merits reproducing here:

Overall Scheme

> 5.     Through various entities and individuals, pharmacies paid
> referring physicians in return for referring or directing profitable
> prescriptions to be filled at those pharmacies.  This scheme resulted in
> pharmacies identifying profitable prescriptions; recruiting doctors to write
> those prescriptions; doctors referring prescriptions to those pharmacies in
> return for a share of the profits on those prescriptions; the pharmacies
> tracking each prescription by doctor by profit; and then pharmacies illegally
> paying the doctors through various business arrangements designed to
> conceal and disguise the nature of the payments.

(Indictment ¶ 5).  That central objective goal of the scheme remained constant throughout

the entirety of the conspiracy.

The conspiracy, which lasted from September 1, 2013 through at least October

2019, consisted of three groups of coconspirators.  Defendants Amir Mortazavi Arvin

Zeinali (collectively, defendant pharmacy executives) worked at pharmacies that they

owned, controlled, or operated.  (Indictment ¶¶ 8-9, 13, 28).  The defendant pharmacy

executives worked to provide doctors with a list of the most profitable prescriptions, track

prescription referrals, and ultimately direct the kickbacks to the doctors.  These

defendants profited by sharing in the proceeds of the prescription claims.

Defendants Robert Leisten, Amy Haase, Arnold Farbstein, Barry Weinstein, Eric

Berkman, Jorge Cuza, Kathern McCarty, James Ellis, Walter Strash, and David Wolf

(collectively, defendant doctors) were doctors of various specialties who wrote the

prescriptions.  (Indictment ¶¶ 17-26).  The defendant doctors worked with the pharmacy

executives throughout the scheme to write those prescriptions that the pharmacy

executives identified as profitable. In exchange, they received a kickback for their prescriptions. That is, the doctors received a portion of the profits generated by the pharmacy for the prescriptions that were filled.

Vinson Woodlee, a coconspirator and defendant in a separate case, served as a marketer. (Indictment ¶ 10). He helped recruit doctors to the scheme and facilitated the payment of the kickbacks from the pharmacy executives to the doctors.

As with any long-running scheme, it evolved over time. From approximately 2013 to 2018, the scheme was run through a company called Next Health, which owned and controlled several pharmacies. (Indictment ¶ 6). The defendant pharmacy executives worked at Next Health in various leadership roles managing the Next Health pharmacies. (*Id.* ¶¶ 8-9). The defendant pharmacy executives identified profitable pain and scar cream prescriptions and had the defendant doctors fill prescriptions from that list. (*Id.* ¶ 30.a-b). In exchange for the prescriptions, the defendant pharmacy executives arranged the kickbacks to the ten defendant doctors by disguising them as returns on investment for the doctors' ownership interest in Next Health pharmacies. (*Id.*). That is, defendant doctors were said to own certain pharmacies and received checks from the pharmacies purporting to be their share of the profits of the pharmacy. (*Id.*). In reality, this arrangement served as a cover to give the defendant doctors their share of the profits generated by their prescribing and filling prescriptions at the Next Health pharmacies. (*Id.*).

In approximately 2017 to 2018 and running through 2019, the defendant pharmacy executives and defendant doctors slowly transitioned to Altus. (Indictment ¶ 30.c). The

defendant pharmacy executives acted as co-CEOs of Community Pharmacy Partners, which was associated with Altus/Pharma Select.  (*Id*. ¶¶ 12, 13).  However, their role in the scheme remained unchanged.  The defendant pharmacy executives identified profitable pain and scar cream prescriptions and other drugs and had the defendant doctors fill prescriptions from that list.

In exchange for the prescriptions, the defendant pharmacy executives arranged the kickbacks to the ten defendant doctors by disguising them as returns on investment for ownership interests.  However, at Altus, the doctors' purported ownership interest was now in a managed services organization or "MSO."  On their face, the MSOs appeared to provide services to the pharmacies, but in reality, they served as another vehicle to conceal bribes and kickbacks.  (Indictment ¶ 14).  Thus, defendant doctors were said to own certain MSOs and received checks from the MSOs purporting to be their share of the profits of the MSO.  (*Id*.).  In reality, this arrangement served as a cover to give the defendant doctors their share of the profits generated from their prescribing and filling prescriptions at the Altus pharmacies. (*Id*.).

## ARGUMENT

The Court should deny the defendants' motion to dismiss the indictment.  Count One properly alleges a single, multi-object conspiracy within the applicable limitations period, and any perceived duplicity could be addressed through remedies short of dismissal.  Additionally, the defendants fail to show that the allegations in Count One and Two are deficient in any way.  Each count in the indictment adequately pleads all

essential elements of the charged offenses and facts in support, rendering dismissal unwarranted.

## A.    Count One is not duplicitous on either ground argued by the defense.

Defendants argues that Count One is duplicitous on two separate grounds: (1) it charges an offense under two separate statutes; and (2) it charges multiple conspiracies instead of one.  (MTD at 6-13).[1]  Defendants further argue that the remedy for either violation is dismissal of the count.  (*Id.*).

An indictment may be duplicitous if "it joins in a single count two or more distinct offenses."  *United States v. Baytank (Houston), Inc.*, 934 F.2d 599, 608 (5th Cir. 1991).  But notably, courts in this district have found that "[e]ven if the court determines that the indictment is duplicitous because it charges two or more separate and distinct offenses… 'this flaw *does not require dismissal* of the indictment.'"  *United States v. Simpson*, No. 3:09-CR-249-D, 2011 WL 2880885, at *5 (N.D. Tex. July 15, 2011) (quoting 1 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 145, at 94-95 (4th ed. 2008)).  Instead, the proper remedy is to require the government to "elect the single count on which it plans to rely, and as long as the evidence at trial is limited to only one of the charges in the duplicitous count, the defendant's challenge is likely to fail."  *Id*; *see also United States v. Medel-Guadalupe*, 987 F.3d 424, 428 n.3 (5th Cir. 2021) (holding same).  Additionally, the risk that a jury will convict without unanimity can be eliminated with an

---

[1]  When citing to the defendants' motion, the government cites the page number used by defendants at the bottom of the page not the electronically paginated number at the top of the page.

instruction specifically directing the jury to convict only if it unanimously agrees on the charge. *Simpson*, 2011 WL 2880885, at *6 (citing 1 A Wright & Miller § 145, at 95).

Here, Count One is not duplicitous as it charges a single, multi-object conspiracy under one statute. But even if the Court were to find more than one offense charged, the Court can address the issue in multiple ways short of dismissal.

### 1.    Count One charges a two-object conspiracy under 18 U.S.C. § 371.

Defendants first argue that Count One is duplicitous because it charges violations of two separate statutes. Count One alleges a single conspiracy with multiple objects: (1) to commit a violation of the Travel Act, in violation 18 U.S.C. § 1952, by committing a violation of the Texas Commercial Bribery Statute; and (2) to commit a violation of Honest Services Wire Fraud, in violation of 18 U.S.C. §§ 1343 and 1346. (Indictment ¶ 28).

The government acknowledges that, due to a scrivener's error, the indictment is unclear as to whether Count One charges the conspiracy under 18 U.S.C. § 371, 18 U.S.C. § 1349, or both. The intent was to charge a single conspiracy under 18 U.S.C. § 371 with the two aforementioned predicate objects. Defendants concede that such multi-object conspiracies would be valid under a violation of Section 371. (MTD at 7). To clear up confusion and make the government's intent plain to the defendants and the jury, the government intends to either supersede the indictment or file a motion to strike the two mentions of Section 1349 from Count One.

But this scrivener's error does not warrant dismissal of the entire count, and defendants offer no caselaw to support such a drastic measure. As noted above, the

proper remedy would require the government to elect which charge it wished to pursue and make such election clear to the jury. *Medel-Guadalupe*, 987 F.3d at 428 n.3; *Simpson*, 2011 WL 2880885, at *5. The government has made that election far in advance of trial and intends to amend the indictment to make clear its position to the jury.[2]

Defendants also argue that it is impossible to determine whether the grand jury found probable cause as to either of the offenses charged in Count One. (MTD at 7). The government is unaware of any Fifth Circuit jurisprudence that raises this issue in the context of a duplicitous count. Regardless, such risk is negligible here where the duplicity being alleged is two conspiracy counts that are alleging the same underlying conspiracy, an agreement between pharmacy executives and doctors to exchange prescriptions for kickbacks.

### 2. Count One only charges one long-running kickback conspiracy.

Defendants next allege that Count One is duplicitous because it charges two distinct conspiracies. (MTD at 9-12). Thus, defendants appear to raise the "often made[ ] but rarely established" "claim of multiple conspiracies" in an attempt to establish that the alleged conspiracy that certain defendants joined is time barred. *United States v. Bell*, 911 F.2d 725, 1990 WL 116782, at *1 (4th Cir. 1990). Specifically, they argue that Count One alleges one conspiracy when the defendants were working with Next Health

---

[2] The other alternative short of dismissal would be a jury instruction and special verdict form ensuring that the jury unanimously convicts on either a Section 371 violation or a Section 1349 violation. *See Simpson*, 2011 WL 2880885, at *6. The government only notes the possibility as another potential alternative to dismissal supported by caselaw.

pharmacies and alleges a second conspiracy when the defendants were working with Altus pharmacies. As with any long running conspiracy, certain aspects evolved over time. But what remained constant throughout were the exact factors the Court looks to when considering this question: the central object and the members. Thus, this argument likewise fails.

"A single conspiracy exists even though the agreement that constitutes it has several objectives and aims at the commission of several offenses." *United States v. Faulkner*, 17 F.3d 745, 760 (5th Cir. 1994) (quoting *United States v. Rodriguez*, 585 F.2d 1234, 1249 (5th Cir.1978)). "Because one conspiracy may have many illegal objectives, it will necessarily involve a number of sub-agreements to commit each of these specified objectives." *Id*.

"In considering whether one or multiple conspiracies exist, the principal factors are (1) the existence of a common goal, (2) the nature of the scheme, and (3) overlapping of participants in the various dealings." *Faulkner*, 17 F.3d at 761. The Fifth Circuit has "defined the 'common goal' factor used to count conspiracies broadly." Adequate common purposes include "(1) the passing of a large quantity of counterfeit bills over a period of time; (2) a series of staged automobile collisions involving a varying pattern of participants, in different locations, over an extended time period; (3) a plan, over three years in process, with varying participants, to buy cocaine; and (4) in a mail fraud conspiracy case, mutual enrichment or the amassing of money by false representations[.]" *United States v. Richerson*, 833 F.2d 1147, 1153 (5th Cir. 1987).

In evaluating the "nature of the scheme," the Fifth Circuit inquires "as to whether "the activities of one aspect of the scheme are necessary or advantageous to the success of another aspect or to the overall success of the venture." *United States v. Payne*, 99 F.3d 1273, 1280 (5th Cir. 1996) (citing *United States v. Morris*, 46 F.3d 410, 416 (5th Cir. 1995).

The overlap of participants examines "the interrelationships among the various participants in the conspiracy.  The more interconnected the various relationships are, the more likely there is a single conspiracy." *Morris*, 46 F.3d at 416.  But "[t]here is no requirement that every member must participate in every transaction" and "parties who knowingly participate with core conspirators to achieve a common goal may be members of an overall conspiracy." *Id*. (citing *Richerson*, 833 F.2d at 1153 (5th Cir. 1987)).

Even where multiple conspiracies may exist under one count, the remedy is not necessarily dismissal.  For example, the Firth Circuit in *Faulkner*, held that even if the evidence established the existence of separate conspiracies, there was no reversible error where the defendants were tried under an indictment alleging one conspiracy. *Faulkner*, 17 F.3d at 761.

Here, every factor counsels in favor of finding one conspiracy.  With respect to the common goal, the indictment defines the overall scheme: "Through various entities and individuals, pharmacies paid referring physicians in return for referring or directing profitable prescriptions to be filled at those pharmacies."  (Indictment ¶ 5).  That purpose—kickbacks in exchange for prescriptions—is constant not just through the entire period of the scheme but among the participants.  That is, defendants Mortazavi and

Zeinali were paying kickbacks to all ten defendant doctors in exchange for the doctors submitting prescriptions to pharmacies associated with, controlled by, owned by, or operated by Mortazavi and Zeinali. Any further distinction, such as how the doctors were paid or what pharmacies were used, is merely identifying different sub-agreements and objectives of the scheme.

The unitary nature of the scheme is also manifest from the roles of the participants. All ten defendant doctors served to prescribe the valuable prescriptions to the pharmacies and generate profits. The two defendant pharmacy executives facilitated the filling of the prescription and the billing of the insurance companies. The success of each of the participants' objectives was necessary and/or advantageous for the success of the overall objective of the kickbacks-in-exchange-for-prescriptions scheme.

Finally, there is sufficient overlap of members to establish a single conspiracy. The scheme, as alleged in the indictment, consists of two groups of defendant doctors, each working with the two defendant pharmacy executives, the "core conspirators." (*See* Indictment ¶¶ 30.e and 30.f). A single conspiracy does not require any more overlap so long as there is overlap between the conspirators and central figures. *See Morris*, 46 F.3d at 416 (holding a single drug conspiracy existed where buyers and sellers were working with a "key man" in a cocaine business).

Defendants eschew analysis under the three factors recognized by the Fifth Circuit and instead contend that the different manner and means by which the conspiracy morphed over time are proof of two separate criminal conspiracies: the Next Health

Conspiracy and the Altus Conspiracy.[3]  (MTD at 10-11).  The Court should reject this construction.  The government concedes that there are differences in the way defendants executed the overall scheme when working with Next Health and when working with Altus.  The indictment makes that clear.  But the Fifth Circuit has not identified such differences or evolutions in a scheme as the reason to find that multiple conspiracies exist.  Thus, for example, it is of no moment that the payment methods evolved from Class A and Class G pharmacies to Managed Services Organizations.  One would expect that a conspiracy may evolve over time for reasons such as avoiding detection by law enforcement.  What matters to the instant analysis is that the defendant pharmacy executives continued to pay the defendant physicians throughout the scheme in exchange for referrals.

Defendants further argue that the acts in the Next Health conspiracy could not have advanced the goals of the Altus conspiracy because the two companies were, at one point, competitors.  (MTD at 10-11).  But this misunderstands the common-goal prong.[4]

---

[3] Defendants describe these as "hub and spoke" conspiracies where the hub for one is Next Health and the hub for the other is Altus.  But the Fifth Circuit has long disfavored comparison of conspiracies to hubs and spokes.  As the Fifth Circuit said over 20 years ago, "[c]onspiracies are as complex as the versatility of human nature and federal protection against them is not to be measured by spokes, hubs, wheels, rims, chains or any one or all of today's galaxy of mechanical molecular or atomic forces."  *Payne*, 99 F.3d at 1280  (quoting *United States v. Perez*, 489 F.2d 51, 59 n. 11 (5th Cir. 1973)).

[4] The government notes that defendants cited to several cases where courts were determining whether the government's prosecution of multiple conspiracies violated the Double Jeopardy clause—not whether the government's single charged conspiracy count should be split.  *See United States v. Duffey*, 456 F. App'x 434 (5th Cir. 2012) (upholding conviction and finding no Double Jeopardy clause violation where government alleged and jury convicted defendants of multiple conspiracy counts); *United States v. Cihak*, 137 F.3d 252 (5th Cir. 1998) (upholding conviction of conspiracy count and finding no Double Jeopardy clause violation where defendants had been convicted previously of a similar conspiracy); *United States v. El-Mezain*, 664 F.3d 467, 548 (5th Cir. 2011) (same).  The Fifth Circuit in these cases employed a similar but different five-factor test under *United States v. Marable*, 578 F.2d 151 (5th Cir. 1978).  As a result, the

A scheme constitutes a single conspiracy so long as its various parts are "advantageous" to one another *or to the overall success of the venture*. *Morris*, 46 F.3d at 416 (citing *United States v. Elam*, 678 F.2d 1234, 1246 (5th Cir. 1982)).

Whether the actions of one conspiracy advance the other should be evaluated in the context of each conspiracy's objective and ultimately used to determine if those objectives are different. In *United States v. El-Mezain*, the Court undertook the analysis to show that the specific wire transactions in one objective were meant to benefit a specific terrorist while the other transactions were meant to benefit a separate terrorist organization. 664 F.3d 467, 548 (5th Cir. 2011). But the goal of both the Next Health and Altus conspiracies were for defendant doctors to get paid through kickbacks and the pharmacy executives to benefit from the prescription referrals. All the acts alleged in the indictment—be it from the Next Health period or the Altus period—are in furtherance of that goal.

Even if the Court were to find the existence of multiple conspiracies, there is no case law to support dismissal absent other considerations. As noted above, the government would only be required to split the conspiracy counts, either by modifying the indictment or through jury instruction. Again, defendants fail to cite to any cases requiring dismissal.

---

Court's analysis in these cases cannot necessarily be substituted for the Fifth Circuit precedent on multiple conspiracies in the context of duplicity.

**B.** **Count One is not barred by the statute of limitations.**

Defendants argue that if two conspiracies exist—Next Health and Altus—then the Next Health conspiracy is barred by the five-year statute of limitations.  (MTD at 13).  The government agrees that were the Court to find that Count One alleges multiple separate conspiracies, and that the purported Next Health conspiracy ended in 2018, it would not be able to pursue the Next Health conspiracy as the statute of limitations had expired at the time of the indictment.  Under that scenario, the government would still be able to move forward on Count One on the Altus conspiracy—and defendants do not argue otherwise.

However, as argued above, Count One does not allege two separate conspiracies with one ending in 2018 but, rather, one long conspiracy with overt acts occurring within the statute of limitations.  Therefore, Count One is not barred by the statute of limitations.[5]

**C.** **The indictment sufficiently pleads a violation of both Count One and Two.**

Defendants next argue that Count One and Two must be dismissed because both counts "fail[] to accurately state the requisite elements of the underlying offense charged"

---

[5] The government does not address Defendant Mortazavi's withdrawal argument because a finding of multiple conspiracies would lead to dismissal based on statute of limitations regardless.  But the government notes that nothing in the indictment suggests Mortazavi withdrew from any conspiracy.  Mortazavi's apparent use of his resignation as proof of his withdrawal from the conspiracy employs circular logic and fails to meet the legal test for withdrawal.  *United States v. Varga*s, 6 F.4th 624 (5th Cir. 2021) (a defendant is presumed to continue in a conspiracy unless he makes a substantial affirmative showing of withdrawal, abandonment, or defeat of the conspiratorial purpose) (citation omitted).  On the contrary, the fact that Mortazavi resigned from Next Health but continued to pay doctors for prescription referrals—with the same codefendants and the same doctors—is further evidence that Next Health and Altus were just vehicles in furtherance of the same scheme.  And this fact clearly shows he did not withdraw from any conspiracy.

in light of the indictment's purported failure to sufficiently describe the Texas Commercial Bribery Act. (MTD at 15-17). Defendants have no support for their theory that something more than the statute is required to sufficiently allege an underlying TCBA violation. Nor do they cite to any rule or Fifth Circuit precedent rendering the indictment deficient in this respect.

Federal Rule of Criminal Procedure 7(c)(1) requires that an indictment be "a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7. The purpose of an indictment is 'to allege each essential element of the offense charged so as to enable the accused to prepare his defense and to allow the accused to invoke the double jeopardy clause in any subsequent proceeding.'" *United States v. Lawrence*, 727 F.3d 386, 397 (5th Cir. 2013) (quoting *United States v. Morrow*, 177 F.3d 272, 296 (5th Cir. 1999)). "Generally, an indictment [that] follows the language of the statute under which it is brought is sufficient to give a defendant notice of the crime of which he is charged." *United States v. USPlabs, LLC*, 338 F. Supp. 3d 547, 557 (N.D. Tex. 2018) (quoting *United States v. Thomas*, 348 F.3d 78, 82 (5th Cir. 2003)).

Defendants appear to suggest that the indictment violates Rule 7 because it does not plead what they believe is an essential element of the Texas Commercial Bribery Statute. (MTD at 16). As defendants note, the indictment not only pleads a violation of the TCBS but also summarizes the statute itself. (Indictment at ¶ 2). The summary makes clear that the TCBS is not a strict liability statute but has a *mens rea* requirement in line with the existing Texas case law cited by the defendants.

Moreover, the indictment does not require further explanation of the TCBS because the Fifth Circuit has already held that a specific violation of the TCBS is not necessary to sustain a conviction:

> [T]he Supreme Court has long recognized that violation of state commercial bribery statutes is a valid predicate for Travel Act convictions, and this court has long held that a state statute serves merely to define the "unlawful conduct" required in the Travel Act. There "is no need to prove a violation of the state law as an essential element of the federal crime."

*United States v. Shah*, 95 F.4th 328, 363–64 (5th Cir. 2024) (quoting *United States v. Prince*, 515 F.2d 564, 566 (5th Cir. 1975)).[6]

Regardless, to the extent defendants are entitled to any additional elements, the situation can assuredly be addressed through jury instruction.[7]

**D.    Count Two is wholly supported by allegations that the defendants knew the unlawful purpose of the financial transactions.**

Finally, contrary to defendants' assertions (MTD at 24-25), the indictment more than adequately alleges the requisite knowledge to support Count Two.  At the pleading stage, an indictment need only (1) contain the elements of the charged offense charged; (2) fairly inform the defendant of the charges; and (3) enable the defendant to prepare a defense.  *United States v. Davis*, 53 F.4th 833, 845 (5th Cir. 2022).  These requirements

---

[6] Notably, the Fifth Circuit upheld the conviction in *Shah*, which similarly charged a conspiracy to violate the Travel Act with an underlying predicate of a violation of the TCBS.  *See Shah*, 95 F.4th at 389.  While defendants did not appear to challenge the sufficiency of the pleading in that case, the government notes that the indictment appeared to have described the TCBS in even fewer terms.  *See United States v. Beauchamp et al.*, No. 3:16-CR-0051 (N.D. Tex 2016), Dkt. No. 1.

[7] The government ignores the reference to Count Two as defendants did not make any argument as to how the deficiency in Count One would affect it.

ensure that the grand jury found probable cause for each element, as required by the Fifth

Amendment. *Id.* (citing *United States v. Cabrera-Teran*, 168 F.3d 141, 143 (5th Cir.

1999)).

Count Two undoubtedly satisfies that standard by incorporating the allegations set

forth in Count One and including the below quoted portion:

> the defendants . . . did knowingly combine, conspire, and agree with
> Woodlee, with each other, and with other persons known and unknown to
> the Grand Jury to commit offenses against the United States in violation of
> Title 18, United States Code, Section 1956, to wit: to knowingly conduct
> and attempt to conduct financial transactions affecting interstate commerce,
> which transactions involved the proceeds of specified unlawful activity, that
> is,
>
> conspiracy to commit commercial bribery under Texas law and the Federal
> travel act as charged in Count One, conspiracy to commit wire fraud by
> deprivation of the intangible right of honest services as charged in Count
> One, and/or conspiracy to commit healthcare fraud in violation of 18
> U.S.C. §§ 1347 and 1349,
>
> knowing that the transactions were designed in whole or in part to conceal
> and disguise the nature, location, source, ownership, and control of the
> proceeds of specified unlawful activity, and that while conducting and
> attempting to conduct such financial transactions, knew that the property
> involved in the financial transactions represented the proceeds of some
> form of unlawful activity, in violation of Title 18, United States Code,
> Section 1956(a)(1)(B)(i).

(Dkt. No. 1 ¶¶ 32-33); *see United States v. Lozano*, 158 F. App'x 632, 638 (5th Cir. 2005)

(holding that a similarly worded quotation adequately alleged the defendant's requisite

knowledge); *c.f. United States v. Threadgill*, 172 F.3d 357 (5th Cir. 1999).

Count One alleges that the defendants "knowingly and willfully conspired,

confederated, and agreed" with each other and other conspirators to violate the Travel Act

and commit wire fraud by depriving patients of their right to honest services. (Dkt. No. 1 ¶ 28). The indictment also alleges that physicians, marketers, pharmacists, and health care executives know and understand that it is illegal to pay or receive bribes and kickbacks in exchange for prescriptions. (*Id.* ¶¶ 1, 36). And Count One sets forth each defendant's participation in the unlawful scheme—facts demonstrating their understanding of the scheme's unlawful purpose. (*Id.* ¶¶ 6-31). Count Two—which is predicated on Count One—then alleges additional context on the structure and nature of the knowingly-entered money-laundering conspiracy and the roles of the various groups involved. (*Id.*)

The law is well settled that conspirators need not know every aspect of a conspiracy to join it. *See United States v. Chapman*, 851 F.3d 363, 378 (5th Cir. 2017) ("An individual need not know all the details of the unlawful enterprise or the exact number or identity of all the coconspirators in order to be liable as a coconspirator.") (cleaned up); *see also* Fifth Circuit Pattern Jury Instruction 2.76(C) (2015). It is sufficient that each defendant knowingly joined an agreement to conceal unlawful proceeds. And the combined allegations in Counts One and Two are more than sufficient adequately allege each defendants knowing participation in a money-laundering conspiracy and their knowledge of the unlawful purpose of the transactions involved. S*ee Lozano*, 158 F. App'x at 638. Thus, dismissal of Count two is unwarranted.

## CONCLUSION

For these reasons, the government respectfully asks that the Court deny the

defendants' motion to dismiss.

Respectfully submitted,

NANCY LARSON
ACTING UNITED STATES ATTORNEY

*/s/ Marty Basu*
CHAD E. MEACHAM
Assistant United States Attorney
Texas Bar No. 00784584
Email: chad.meacham@usdoj.gov
MARTY BASU
Assistant United States Attorney
Illinois Bar No. 6302360
Email: marty.basu@usdoj.gov
ELISE ALDENDIFER
Texas Bar No. 24124103
Email:  elise.aldendifer@usdoj.gov
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Tel: (214) 659-8600
Fax: (214) 659-8809
**Attorneys for the United States**