IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § § | |
| vs. | § § | |
| AMIR MORTAZAVI (01)<br>ROBERT LEISTEN (05)<br>AMY HAASE KERNE (06)<br>ARNOLD FARBSTEIN (07)<br>ERIC BERKMAN (09)<br>JAMES ELLIS (12)<br>WALTER STRASH (13)<br>DAVID WOLF (14) | § § § § § § § § § § § | CASE NO. 3:24-CR-00049-S |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS INDICTMENT**

Pursuant to Federal Rule of Criminal Procedure 12, Defendants Amir Mortazavi, Dr. Robert Leisten, Dr. Amy Haase Kerne, Dr. Arnold Farbstein, Dr. Eric Berkman, Dr. James Ellis, Dr. Walter Strash, and Dr. David Wolf (collectively, "Defendants") respectfully file this brief in support of their Motion to Dismiss the Indictment [Doc. 251] (the "Motion") and state as follows:

### I.     INTRODUCTION

The Government's Response to Defendants' Motion to Dismiss Indictment [Doc. 276] (the "Response") does not cure the constitutional and pleading defects identified in Defendants' Motion. Instead, it confirms that Count One is fatally duplicitous and constitutionally infirm; that the Government's proposed after-the-fact remedies are insufficient; and that Count Two fails independently for lack of well-pleaded predicate and *mens rea* allegations. As further explained below and in the Motion, the errors in Count One also mandate dismissal of Count Two, as Count Two is premised on the legally deficient theories in Count One.

## II. ARGUMENT AND AUTHORITIES

### A. The Admitted Flaw in Count One is Not a Mere "Scrivener's Error" and Warrants Dismissal of the Indictment

The Government's admitted error has already impacted Defendants' substantive rights and, thus, warrants dismissal of Count One and, because it is premised in part on Count One, Count Two as well. *Cf. United States v. Smith*, 891 F.2d 703, 712 (9th Cir. 1989) (declining to dismiss indictment on duplicity grounds only because "defendants were charged with a conspiracy under separate clauses of the same statute, **not two separate statutes**.") (emphasis added). The Government concedes that Count One combines two distinct conspiracy statutes *(i.e.,* a conspiracy to violate the Travel Act under 18 U.S.C. § 371 and a conspiracy to commit wire fraud under 18 U.S.C. § 1349) and characterizes the flaw as a mere "scrivener's error." (Resp. at 6).[1]

But the cure proposed cannot retroactively fix the grand jury's tainted determination. As further explained in the Motion, the Constitution requires that "at least 12" grand jurors concur as to each count. Fed. R. Crim. P. 6(f). Where a count combines two distinct conspiracies, courts cannot "guess" which offense the grand jury agreed upon. *See Russell v. United States,* 369 U.S. 749, 770 (1962). Defendants raised this precise concern, and the Government identifies no Fifth Circuit authority authorizing a post-return "election" to satisfy the grand jury right where the indictment itself failed to secure concurrence on a single offense. (*See generally* Resp.).

The Government suggests it can remedy the problem by superseding the Indictment or striking its erroneous language. (Resp. at 6). Such half measures ignore the harm already suffered by Defendants. *See* U.S. CONST. amend. VI ("[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation"). The Government has

---

[1] When citing to the Response, Defendants cite the page number used by the Government at the bottom of the page, not the electronically paginated number at the top of the page.

produced well over 4 million documents and more than 1,400 FBI 302 Reports in this case. Defendants have spent extensive hours and fees reviewing and analyzing such documents in large part to defend against a Section 1349 charge—and the 20-year maximum sentence it carries—that the Government now offhandedly disclaims. *See* 18 U.S.C. § 1349. But the Government's eleventh-hour promise to fix its error at some unspecified future date cannot eliminate the prejudice and confusion caused by the faulty Indictment since its return nearly two years ago, especially now that the parties are less than four months out from trial. (*See* Resp. at 6; *see generally* Doc. 1).

The Government leans on the notion that duplicity is not grounds for dismissal and that the remedy is an election or jury instruction (Resp. at 6-7). But that is not categorical. Courts recognize that an impermissibly duplicitous indictment is subject to dismissal where it threatens core constitutional protections—notice, unanimity, and double jeopardy. *See, e.g.*, *United States v. Rigas*, 605 F.3d 194, 210 (3d Cir. 2010) ("An impermissibly duplicitous indictment is subject to dismissal."); *see also Lewis v. State*, 124 Tex. Crim. 582, 64 S.W.2d 972, 977 (1933) (ordering dismissal of prosecution under an indictment that combined two separate offenses in one count). Here, the Indictment is impermissibly duplicitous as Defendants' substantive right to a constitutionally sufficient grand jury determination was compromised—both by the Government's "scrivener's error" and its reliance on time-barred evidence from Next Health, a long-closed enterprise on which the Government has largely staked its case. *See United States v. Cabrera-Teran*, 169 F.3d 141, 143 (5th Cir. 1999) (footnote omitted), *overruled on other grounds as recognized in United States v. Longoria*, 298 F.3d 367, 372 & n.6 (5th Cir. 2002) *(en banc) (per curiam)* (emphasizing that "one of the central purposes of an indictment [is] to ensure that the grand jury finds probable cause that the defendant has committed each element of the offense, hence justifying a trial, as required by the Fifth Amendment.").

Because Count One joined two distinct conspiracy offenses in a single count, it is duplicitous and should be dismissed. The same duplicity infects Count Two's money-laundering predicate, which the Government ties to "specified unlawful activity" charged in Count One. (*See* Doc. 1 ¶ 33). As such, Count Two must likewise be dismissed.

### B. Count One Impermissibly Aggregates Distinct Conspiracies and Is Duplicitous

The Government correctly recites the factors for determining whether one or more conspiracies exist, including "(1) the existence of a common goal, (2) the nature of the scheme, and (3) overlapping participants in the various dealings." (Resp. at 8) (quoting *United States v. Faulkner*, 17 F.3d 745, 761 (5th Cir. 1994)). However, its "one long-running kickback conspiracy" theory is flawed, as explained below and in Defendants' Motion. (Resp. at 7).

First, the Government overreads Fifth Circuit "common goal" cases where significant emphasis was placed on the nature of the overt acts charged (*i.e.*, the concrete, transaction-level conduct alleged in each case), not merely the end goal or beneficiary. *See United States v. El-Mezain*, 664 F.3d 467, 548-49 (5th Cir. 2011) (rejecting the argument that similar overt acts proved a single conspiracy and cautioning "we must be mindful that '[i]t is possible to have two different conspiracies to commit exactly the same type of crime.'" (quoting *United States v. Thomas*, 759 F.2d 659, 666 (8th Cir. 1985))). Here, there is significant divergence between overt acts alleged in relation to Next Health and Altus. Next Health made payments to physician investors (and sometimes their family members) for referrals to its Class A and G pharmacies and Managed Services Organizations ("MSOs"), but labeled those payments as ownership returns. (*See* Doc. 1 ¶¶ 6-11). Overt acts at Altus, however, were alleged kickbacks funneled through new MSOs. (*See* Doc. 1 ¶¶ 12-26). Crucially, Altus had no Class A or G pharmacies during the relevant time period, and no direct payments to physicians or their family members are alleged. These

distinctions counsel finding separate conspiracies. *See United States v. Coscarelli*, No. 98-21120, 2000 WL 284044, at *4 (5th Cir. 2000) (finding separate conspiracies despite key commonalities, including shared principal co-conspirators and overall goal, in part because different basic overt acts were involved).

Even accepting the Government's overemphasis on the beneficiary consideration, the Fifth Circuit has found no common goal on facts analogous to the instant case. *See El-Mezain*, 664 F.3d at 548 (finding no common "support to terrorists" goal because, in one objective, wire transfers benefitted an individual terrorist and, in another, transfers benefitted a terrorist organization); *see also United States v. Guzman*, 852 F.2d 1117, 1121 (9th Cir. 1988) (finding no common "cocaine distribution" goal despite one conspiracy aiming to possess a large cocaine shipment to distribute it, and a second conspiracy seeking to manufacture cocaine at a lab for later distribution). Likewise, proceeds from the alleged Next Health conspiracy ultimately benefitted materially different stakeholders than did the conspiracy alleged at competitor enterprise Altus. (*See* Doc. 1 ¶ 7) (acknowledging that the leaders of Next Health, Andrew Hillman and Seymon Narosov, stayed behind, along with the rest of Next Health's executive team at Altus's inception).

The Government also wrongly characterizes Defendants Amir Mortazavi and Arvin Zeinali as "core conspirators" to find "key man" continuity between Next Health and Altus where none exists (Resp. at 10). Rather, Next Health was "principally controlled by" unindicted co-conspirators Hillman and Narosov, who "directed the activities of Next Health until at least July 2018," along with other unindicted co-conspirators and company board members. (Doc. 1 ¶ 7). The Government alleges that, following Mr. Mortazavi's 2017 resignation from Next Health, Mr. Mortazavi, Mr. Zeinali, and unindicted co-conspirator Vinson Woodlee "moved a large share of Next Health's illegal pharmacy business" to Altus. (Doc. 1 ¶ 12). The undisputed "key men" at Next Health,

directors Hillman and Narosov, did not accompany Defendants to Altus, nor did Next Health's executive team. (Doc. 1 ¶ 7). Far from serving as a connecting thread between related entities, therefore, Defendants' move to Altus created competition between the businesses and cuts against finding a single conspiracy. *See United States v. Jones*, 733 F.3d 574, 581-82 (5th Cir. 2013) ("If the central figures of the cases are different, or if they serve different functions for purposes of the conspiracies, it is less likely that there is a single agreement.") (quoting *El-Mezain*, 664 F.3d at 547).

Even taken independently, the Indictment's own headings, timelines, and allegations direct separation. (*See* Doc. 1 ¶¶ 6-26). The alleged conspiracies had distinct: (1) hubs in Next Health and Altus; (2) manners and means; and (3) operating periods for Next Health (2013-2018) and Altus (2017-2019). (*See* Motion at 11; Doc. 1 ¶¶ 6-26). These are not mere evolutions in a single long-running conspiracy; they are separate agreements. *See United States v. Ellis*, No. H-10-416-S, 2011 WL 3793679, at *7 (S.D. Tex. Aug. 25, 2011) ("despite the partial overlap of time, location, conspirators and statutory offenses alleged, the nature and scope of the parties' agreements are materially different and these differences overshadow the similarities."); *Coscarelli*, 2000 WL 284044, at *4 (finding separate conspiracies in fraudulent telemarketing scheme despite identical principal co-conspirators, both schemes using misrepresentation to defraud, and both sharing a goal due to different timeframes, overt acts, and lesser personnel).

The Government relies on *United States v. Faulkner* to assert that, even if evidence established the existence of separate conspiracies, there was no reversible error where defendants were tried under an indictment alleging one conspiracy. (*See* Resp. at 9) (citing 17 F.3d 745, 761 (5th Cir. 1994)). Here, however, *Faulkner*'s fatal variance analysis vitiates the Government's point, as "[a] variance between the offense charged in the indictment and the proof relied upon at

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS INDICTMENT                                6

trial constitutes reversible error [ ] if it affects the substantial rights of the defendant." *Id.* (citing *United States v. Bruno*, 809 F.2d 1097, 1103 (5th Cir. 1987)). As the Government concedes, a finding by the Court that multiple conspiracies exist here means prosecution for Next Health-related events would be precluded by the limitations period. (Resp. at 13). That the Government relied heavily upon evidence surrounding Next Health to secure its Indictment would indisputably represent a fatal variance impacting Defendants' substantial rights at trial.

    **C.    Counts One and Two Fail to Plead the Underlying TCBS Predicate Adequately**

As illustrated in Defendants' Motion, the Indictment's Texas Commercial Bribery Statute (Tex. Penal Code § 32.43, "TCBS") description is materially incomplete under Texas law, which requires, *inter alia*, knowledge sufficient to establish that the benefit was in consideration for a breach of fiduciary duty—and corresponding knowledge by the offeror regarding the offeree's fiduciary status and breach. *See Ex parte Mattox,* 683 S.W.2d 93, 97 (Tex. App.—Austin 1984, pet. ref'd), 685 S.W.2d 53 (Tex. Crim. App. 1985) (citing *Pfleging v. State,* 572 S.W.2d 517 (Tex.Cr.App. 1978)); *Ledesma v. State,* 677 S.W.2d 529 (Tex.Cr.App. 1984); *Goss v. State,* 582 S.W.2d 782 (Tex.Cr.App. 1979). The Indictment omits these requirements.

The Government responds that tracking statutory language suffices and that Travel Act predicates do not require proving a state-law violation as an "essential element." (Resp. at 14-15). That misses Defendants' point. Here, the Indictment chose to define and rely on TCBS to supply the "unlawful activity" and manner and means. (Doc. 1 ¶ 28). Having done so, it must allege facts meeting the TCBS elements it invokes—including the requisite knowledge—to provide notice and satisfy the grand jury function. *See Mattox*, 683 S.W.2d at 97 ("A requirement of scienter may mitigate [Section 32.43's] vagueness, especially with respect to the adequacy of notice to an individual that his conduct is proscribed."). The Government's reliance on generalized pleading

standards and potential jury instructions does not repair the Indictment's omissions where the Indictment itself purports to describe the predicate but omits material elements recognized in Texas authority.

### D. Count Two Fails for Lack of Allegations that Defendants Knew the Unlawful Purpose of the Transactions

Defendants' Motion also demonstrates Count Two does not allege facts supporting that any Defendant knew the subject transactions involved proceeds of unlawful activity and were designed to conceal or disguise, nor facts showing knowledge of the alleged money-laundering vehicles (*e.g.*, Raintree).[2] (*See* Motion at 17-18; Doc. 1 ¶¶ 33-38). The Government quotes Count Two's statutory recitations and asserts incorporation of Count One suffices, citing general Fifth Circuit standards. (Resp. at 15-16). But mere parroting of § 1956(a)(1)(B)(i) is inadequate where, as here, the Indictment otherwise details varied payment structures without factual allegations that they were designed to conceal or that each Defendant knew that unlawful purpose. (Doc. 1 ¶¶ 33-38). At minimum, the Government's own reliance on "and/or" predicates and aggregated theories accentuates the duplicity and unanimity problems already identified, further undermining Count Two. (*See* Resp. at 16). Even if Count One were sound (it is not), Count Two would still fail for lack of well-pleaded *mens rea* and purpose-to-conceal allegations.

### III.   CONCLUSION

For these reasons and those stated in their Motion to Dismiss, Defendants respectfully request the Court dismiss the Indictment in its entirety.

---

[2] The Government relies on Indictment allegations that "physicians, marketers, pharmacists, and health care executives know and understand that it is illegal to pay or receive bribes and kickbacks in exchange for prescriptions." (Resp. at 17) (citing Doc. 1 ¶¶ 1, 36). Notably, Defendants have moved to strike that language from the Indictment as surplusage, such motion being incorporated herein by reference.

Respectfully submitted,

*/s/ Paul E. Coggins*
Paul E. Coggins
Texas Bar No. 04504700
Jennifer M. McCoy
Texas Bar No. 24089805
Alexandra G. Lancey
Texas Bar No. 24141263
Kaci M. Jones
Texas Bar No. 24136933
TROUTMAN PEPPER LOCKE LLP
2200 Ross Avenue, Suite 2800
Dallas TX 75201
Tel. 214-740-8000
Fax. 214-740-8800
**ATTORNEYS FOR AMIR MORTAZAVI (01)**

/s/ *Anthony Box*
Anthony Box
Texas Bar No. 24133857
abox@grayreed.com
Christopher A. Davis
Texas Bar No. 24050483
cdavis@grayreed.com
Angela L. Brown
Texas Bar No. 24034533
abrown@grayreed.com
GRAY REED
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Tel: (214) 954-4135
Fax: (214) 953-1332
**ATTORNEYS FOR ROBERT LEISTEN (05)**

        */s/ JoAnne Musick*
        JoAnne Musick
        Texas Bar No. 24000371
        Jessica Larson
        Texas Bar No. 24129433
        MUSICK LAW OFFICE PLLC
        2219 Sawdust Rd., Suite 201
        Spring, Texas 77380
        Tel: 832-448-1148
        Fax: 832-448-1147
        **ATTORNEYS FOR AMY HAASE KERNE (06)**

        */s/ Christopher Downey*
        Christopher Downey
        Texas Bar No. 00787393
        chris@downeylawfirm.com
        THE DOWNEY LAW FIRM
        2814 Hamilton
        Houston, TX 77004
        Tel: 713-651-0400
        Fax: 713-349-9909
        chris@downeylawfirm.com
        **ATTORNEY FOR ARNOLD FARBSTEIN (07)**

        /s/ *Chip Lewis*
        Chip Lewis
        Texas Bar No. 00791107
        chip@chiplewislaw.com
        Erin Epley
        Texas Bar No. 24061389
        erin@epley-law.com
        Dean Blumrosen
        Texas Bar No. 02517900
        dblumrosenlaw@gmail.com
        Inger Chandler
        Texas Bar No. 24041051
        inger@ingerchandlerlaw.com
        1207 S. Shepherd Dr.
        Houston, Texas 77019
        Tel: (713) 523-7878
        **ATTORNEYS FOR ERIC BERKMAN (09)**

/s/ James T. Jacks
James T. Jacks
Texas Bar No. 10449500
jim@jamesjackslaw.com
Ross Tower
500 N. Akard, Suite 2150
Dallas, TX. 75201
Tel: 214.237.0900
Fax: 214.237.0901
**ATTORNEY FOR JAMES ELLIS (12)**


/s/ Jeff J. Ansley
Jeffrey J. Ansley
Texas Bar No. 00790235
jansley@vedderprice.com
Arianna G. Goodman
Texas Bar No. 24109938
agoodman@vedderprice.com
Katherine M. Devlin
Texas Bar No. 24094372
kdevlin@vedderprice.com
VEDDER | PRICE P.C.
300 Crescent Court, Suite 400
Dallas, Texas 75201
469.895.4790 (Ansley)
**ATTORNEYS FOR
WALTER STRASH (13)**


/s/ Brandon N. McCarthy
Brandon N. McCarthy
Texas Bar No. 24027486
brandon.mccarthy@katten.com
Rachel M. Riley
Texas Bar No. 24093044
rachel.riley@katten.com
KATTEN MUCHIN ROSENMAN
2121 North Pearl Street, Suite 1100
Dallas, TX 75201
Tel: 214-765-3680
Fax: 214-765-3602
**ATTORNEYS FOR DAVID WOLF (14)**

## **CERTIFICATE OF SERVICE**

  I hereby certify that, on November 10, 2025, the foregoing document was served on all counsel of record via ECF in accordance with the Federal Rules of Civil Procedure.

                 */s/ Jennifer M. McCoy*
                 Jennifer M. McCoy